## HORN vs. GARRY, imp.

*May 11 — May 27, 1880.*

EQUITY: TAX DEED: TRANSFER OF TAX CERTIFICATE. *(1, 2) Who may sue to restrain issue of tax deed. (3, 4) Rights of assignee or holder of tax certificate as against grantee of assignor.*

1.  Where a vendor of land has contracted with his vendee to have all outstanding tax claims cancelled, and has thereupon procured, and, instead of cancelling, has delivered to such vendee, at his request, tax certificates upon the land, it seems that he has such an interest, by virtue of his liability to the vendee under such contract, as entitles him to proceed in equity to prevent a cloud upon the title by restraining the issue of a tax deed of the land to a third person to whom the certificates have been fraudulently transferred.

2.  Under ch. 240, Laws of 1861, a mortgagee of land, though not in possession, may maintain an action to prevent a cloud upon the title by restraining the issue of a tax deed thereof upon an illegal, void or cancelled tax certificate; and this right continues after a judgment foreclosing his mortgage and prior to a sale.

3.  A certificate of a tax sale of land is not a negotiable instrument; the owner's interest in the land does not pass by a mere delivery of the certificate; and an assignment thereof gives to the assignee only the rights of the assignor, as against one claiming an interest in the land acquired from the assignor prior to such assignment.

4.  H. sold and conveyed land to M., and bound himself in writing (but not, so far as appears, by the terms of his deed) to pay and cancel all delinquent taxes and outstanding tax claims upon such land; and he purchased tax certificates of the county (with an assignment in blank by the county treasurer), and delivered (but did not in writing assign) them to M., at his request, instead of having them cancelled. Afterwards H. obtained a judgment of foreclosure of M.'s mortgage of the land, given at the time of the sale, to secure purchase money; and no part of such judgment has been paid. G. claims to be the lawful owner and holder of the tax certificates, through an intermediate purchaser from M., for value, without knowledge of H.'s rights as against M. *Held,* that H. is entitled to have the issue of a tax deed on the certificates to G. restrained.

APPEAL from the Circuit Court for *Manitowoc* County. The defendants were *John E. Garry* and one Wickert,

county clerk; and the nature of the action and substance of the complaint are thus stated by Mr. Justice TAYLOR:

"This action was brought for the purpose of enjoining the issue of a tax deed or deeds to the appellant, *John E. Garry*, upon two tax certificates, one upon lot 4, and one upon lot 5, in block 183 in the city of Manitowoc, bearing date May, 1874. The allegations in the complaint are, that the plaintiff, on the 4th day of May, 1874, sold and conveyed said lots to one Miles McMahon; that upon such sale the plaintiff bound himself in writing to the said McMahon to pay and cancel all the delinquent taxes and tax claims on said lots within ninety days; that within said ninety days he purchased said tax certificates of the county of Manitowoc, which was then the owner of the same, and at the request of the said McMahon delivered said certificates to him, instead of having the same cancelled; that upon such sale of said lots to McMahon the plaintiff took the notes of said McMahon for $2,000, and a mortgage upon said lots to secure said notes, for a part of the purchase price agreed to be paid by said McMahon; that said notes had long since become due and remain unpaid, and that he had duly foreclosed said mortgage and obtained judgment against the said McMahon upon such foreclosure for the whole amount of said notes, and the costs of such action, and that no part of such judgment has been paid; that said certificates were never assigned by this plaintiff, or by the said McMahon, by indorsement or otherwise, and that the only assignment ever made of the same was the blank indorsement by the treasurer of the county of Manitowoc at the time they were delivered to the plaintiff; and that, on or about the 18th day of August, 1877, the appellant served upon the plaintiff a notice alleging that he was the owner and holder of such certificates, and should, on the 29th day of September, 1877, apply for a tax deed upon the same.

"There are other allegations in the complaint, charging that McMahon fraudulently parted with the possession of the cer-

Horn vs. Garry, imp.

tificates; that he had never paid any taxes on the lots pur-
chased by him, and plaintiff was compelled to pay the same
in order to protect the lien of his judgment; and that the
amount due upon the judgment of foreclosure is more than
the value of said lots; but the allegations first stated are the
ones we deem material, and those allegations were clearly
established upon the trial."

*Garry* answered by a general denial, and by averring that
he purchased the certificates of one Thornton, a prior holder,
for $160, in good faith, believing that they were valid, or that,
if they were illegal, he acquired by such purchase a valid
claim to recover the moneys received by the county on the
sale of the certificates; and that he had no notice of plaintiff's
rights in respect to them.   He also offered, by his answer, to
surrender and assign the certificates to plaintiff on payment
to him by the latter of the amount named in the certificates,
with interest.

The court found all the facts alleged in the complaint, and
also found, *inter alia*, that McMahon, while owner of the
premises, suffered the tax certificates to pass out of his pos-
session and control, with intent to injure and defraud the
plaintiff, but that *Garry* had no knowledge of such wrongful
transfer.   As conclusions of law, the court held, *inter alia*,
that the purchase of the certificates by one legally bound to
pay the tax, and the transfer thereof to the owner of the land,
was a payment of the tax; and that *Garry* was not the legal
owner of the certificates, because they were never assigned to
him.

*Garry* excepted to most of the findings of fact and to the
conclusions of law, and appealed from a judgment in plaintiff's
favor for the relief demanded.

*J. S. Anderson*, for the appellant.

For the respondent there was a brief by *Nash & Schmitz*,
and oral argument by *Wm. F. Vilas*.

TAYLOR, J.  The learned counsel for the respective parties have discussed many questions which, in the view we have taken of the case, it will be entirely unnecessary to consider. The only questions we deem material are, *first*, whether the plaintiff has shown by his allegations in his complaint that he has such an interest in the lots in question as entitles him to proceed in equity to enjoin the appellant from applying for and obtaining a tax deed upon said certificates; and *second*, whether said certificates have any validity in his hands as against the rights of the plaintiff.

We are of the opinion that the plaintiff has alleged two facts in his complaint which entitle him to proceed in equity to enjoin the issuing of a tax deed upon these certificates. The allegation that he sold these lots to McMahon, and bound himself by a valid contract to pay and cancel these certificates, would in itself be sufficient to authorize him to proceed against the pretended claimant in order to prevent the obtaining of a tax deed, which might be used as evidence of a breach of his contract with McMahon to pay these taxes; but, however this may be, the allegation that he has a mortgage lien upon said lands for more than their value, is clearly sufficient to sustain this proceeding.  The right of a person having a mortgage upon real estate to maintain an action to restrain the issuing of a tax deed upon an illegal, void or cancelled tax certificate, is expressly given by chapter 240, Laws of 1861.  See Tay. Stats., 463, § 256.  By the provisions of this section he may have any remedy in the law, in respect to such certificates, that the owner in fee might have under the same circumstances.  That the owner in fee may have an action to remove a cloud upon his title or prevent such cloud from being brought upon it, without alleging or showing that he is in the actual possession of the property at the time of the commencement of the action, is settled by the decisions of this court. *Hamilton v. City of Fond du Lac*, 25 Wis., 490; *Siegel v. Supervisors*, 26 Wis., 70; *Milwaukee Iron Co. v. Town of*

*Hubbard,* 29 Wis., 51; *Pier v. Fond du Lac,* 38 Wis., 470; *Goodell v. Blumer,* 41 Wis., 436–442; *Maxon v. Ayers,* 28 Wis., 612. Had the plaintiff perfected his title to the lots in question by a deed under his foreclosure action, there can be no doubt as to his right to maintain an action to enjoin the issuing of a tax deed upon an illegal, or void tax certificate, and to prevent the taking of a tax deed upon the certificates which he had bought for the very purpose of performing his contract with McMahon, especially against McMahon himself, or some other person claiming under him with full knowledge of all the facts, if they were threatening to take a tax deed upon such certificates. If the owner in fee could maintain such action, then the mortgagee can maintain it under the provisions of the statute above cited.

We do not see any force in the objection that the records would show the tax deeds void, and therefore there would be no cloud upon the title. Upon the facts alleged in the complaint, the records would fail to show the deed void. The fact that the deed was void could only be made to appear by a resort to proof *aliunde.* It does not appear from the allegations or the evidence that the deed from plaintiff to McMahon was a deed of warranty; and it would seem from the allegations of his complaint that his obligation to pay and cancel these tax certificates was based, not upon his deed, but upon a contract made with McMahon, not included in the deed. If, therefore, the records showed that the plaintiff purchased these certificates from the county of Manitowoc after his deed to McMahon, that fact would not be even presumptive evidence that they were cancelled or paid; and in order to raise such presumption it would be necessary to show that by agreement with his grantee, McMahon, it was his duty to cancel and pay the same. The fact that the records of the county show the sale of the certificates to the plaintiff, would not necessarily show that they were cancelled by said sale.

The allegations of the complaint are sufficient to show a

right in the plaintiff to·have the injunction prayed for, unless the present holder of the certificates has a paramount equity. The learned counsel for the respondent has insisted, with great earnestness, that because the evidence does not show that he purchased the certificates with knowledge of the facts alleged by the plaintiff, equity will not place him in the same position in which it would place McMahon, or one claiming under him with full knowledge of all the facts. He does not insist that legally McMahon could transfer to his assignee any greater rights than he had, but insists that equitably the plaintiff should not be permitted to allege that the certificates were paid or cancelled as between himself and McMahon, because, by his negligence in not having them cancelled, he enabled McMahon to defraud the defendant by transferring the certificates to a third person, and from that third person he purchased without any knowledge that they had ever been in the hands of McMahon. It is not insisted that the immediate purchaser from McMahon could have acquired a title to these certificates which would cut off the lien of the plaintiff by virtue of his mortgage, as such immediate purchaser would be presumed to know that McMahon had title to and claimed to own the lands described in the certificates, and would therefore be put upon inquiry, at least, as to the rights of those claiming under him; but, having purchased the certificates from a party having no claim to the lands except what he acquired by the certificates, he is not chargeable with any knowledge of the rights of plaintiff.

The argument proceeds upon the theory that tax certificates are in some sense negotiable instruments; that, being once indorsed by the original purchaser, or, if the county be the purchaser, by the county treasurer, they pass from hand to hand by delivery, and that the holder for the time being is to be treated as the immediate assignee of the original purchaser. This theory is inconsistent with the nature of the instrument itself. A tax certificate is not an instrument which entitles

the holder to demand of any person the payment of money or the delivery of property. It is simply evidence that the person therein named has purchased from the county and state the lands therein described, for the consideration named therein, and it entitles him to a deed of conveyance of the same at the expiration of three years from the date thereof, unless before the expiration of that time the former owner of such lands pays into the proper office the amount for which he purchased the same, with 25 per cent. interest from the date of sale to the time of such payment. It is, as was said by the court in *Eaton v. Supervisors*, 44 Wis., 490, a purchase of the lands upon condition that the sale shall be void upon payment made as above stated, otherwise to be valid, and entitle the owner of it to an absolute title to the land. It gives the owner an interest in real estate, and such interest can only be conveyed by writing in the manner prescribed by statute. The statute provides that such certificates shall be assignable, and that the assignment may be in writing, indorsed thereon or attached thereto, and prescribes the effect which such assignment shall have when properly made. See section 14, ch. 22, Laws of 1859; Tay. Stats., 431, § 150; section 140, R. S. And under section 54, ch. 22, Laws of 1859, the original purchaser may assign the same by writing his name in blank on the back thereof, and, when sold to the county treasurer, with his name of office added. These provisions of the statute clearly show that these certificates are not assignable by mere delivery, but they are treated as instruments giving the owner an interest in real estate, and consequently require an instrument in writing to convey the right of the owner.

This court held in *Capron v. Supervisors*, 43 Wis., 613, in *Kruger v. Supervisors*, 44 Wis., 605, and in *Eaton v. Supervisors, supra*, that the holder of a void tax certificate could not recover of the county the amount he paid therefor, when the lands had been sold to the county, unless he could show an assignment from the county made in one or the other of

the forms above stated. These cases and the statute clearly establish the non-negotiability of these instruments, and assert that they are evidences of title to real estate, which can only be transferred by a written assignment executed by such owner. Whether any owner, except the original purchaser or the county treasurer, can assign his interest in a tax certificate by mere indorsement of his name on the back of the certificate, need not be decided in this case, as the evidence shows that the certificates in question were never indorsed by any one except the treasurer of the county. The evidence further shows that the plaintiff purchased the certificates of the county, and they were delivered by the proper county officer to him as such purchaser, and that, at the request of Mc-Mahon, he delivered them to him, without any assignment or indorsement, in satisfaction of his agreement to pay and cancel all taxes and tax liens on said lots existing thereon previous to the date of his sale of the same, and took from McMahon the following receipt:

"Received, Manitowoc, May 18, 1874, of *Ferdinand Horn*, two tax certificates, being for the redemption of taxes for the year 1873 on lot No. 4 and 5, in block No. 183, in the city of Manitowoc.

"[Signed]　　　　　　　　MILES McMAHON."

This evidence shows conclusively that McMahon could not hold these certificates as evidence of title to the lands described therein, as against the plaintiff and those claiming under him, to defeat any right or lien which he then held to the lands under McMahon. This court held in *Kruger v. Supervisors, supra,* that the owner of a tax certificate could not convey by assignment to a third person "any greater or better right than he himself possessed." If the rule adopted in the case last cited is to stand, it disposes of this case so far as the rights of the appellant are concerned. We think the rule stated in that case is clearly the true rule, qualified, perhaps, by the other rule, that the assignor would be estopped in

equity, and perhaps in law, as against his assignee and those claiming under him, from denying that the certificate was owned by him and had not been cancelled, and that he had lawful right to transfer the same; but this estoppel in favor of the assignees against the assignor would not aid them as against those claiming the title to the same estate under a deed from the assignor previous to the date of the assignment of such certificates.

The cases cited by the learned counsel for the appellant, of the transfer of bills of lading or warehouse receipts made to bearer, are based upon an entirely different principle. These instruments relate to personal property, the title to which may be passed by delivery, and, when there is a sale in fact, the delivery of the documentary evidence of title, with intent to transfer the title, is a sufficient delivery to perfect the transfer of the property itself. The court held in those cases, that, the plaintiff having sold and delivered the property to the person under whom the defendants claimed, a *bona fide* purchase by them of the plaintiff's vendee was valid, notwithstanding such vendee had procured the purchase and delivery of the property by fraud. In the case at bar, the evidence shows that the plaintiff did not sell his interest in the property described in the certificate to McMahon, nor did he make any assignment to him of the interest, if he had any, in the lands described therein; and, the certificates having none of the essential qualities of negotiable instruments, the delivery of the instrument itself passed no title to McMahon which he could transfer to another so as to affect the rights of those claiming an interest in the lands described therein under him by prior title.

*By the Court.* — The judgment of the circuit court is affirmed.