ORMSBY v. OTTMAN et al.

(Circuit Court of Appeals, Eighth Circuit. February 21, 1898.)

No. 950.

1. EQUITY JURISDICTION—STATE STATUTE—SERVICE BY PUBLICATION.
A state has authority by statute to so enlarge the equity powers of its courts as to confer upon them jurisdiction to adjudicate the titles and liens upon real estate within its borders as against nonresidents who are brought into court by publication only.

2. SUIT TO QUIET TITLE—"ADVERSE INTEREST"—LIEN.
A state statute empowering a person claiming title to real estate to bring and maintain a suit to quiet his title against any person or persons who claim an "adverse estate or interest" therein, authorizes the maintenance of such a suit against any person who claims an adverse right, title, or estate in, or lien upon, the real estate in question.

3. SAME—PLEADING.
Under such a statute, a petition alleging that one of the defendants claims to be the assignee for value of the moneys due under the trust deed is sufficient, for the claim alleged constitutes a claim to the whole beneficial interest in the lien secured by the deed, and hence is a claim of an adverse interest in the real estate.

4. SAME—CLOUD ON TITLE.
When a claim to an interest in or lien upon land appears to be valid upon the face of the record, and its defects can only be made to appear by extrinsic evidence, it constitutes a cloud upon the title of the owner, which he may invoke the aid of a court of equity to remove.

5. SAME—SERVICE BY PUBLICATION—STATUTE.
In a suit to foreclose a trust deed of certain real estate in Nebraska, given to O., as trustee, to secure a promissory note (which was afterwards bought by H.), a subsequent purchaser (D.) of the land set up payment of the debt thus secured, and that in a suit brought by D. in a court of the state against O. and H. to quiet the title and remove the cloud of the trust deed, in which the summons was served on those defendants who were nonresidents by publication only, a decree had been rendered to the effect that the trust deed was satisfied and canceled, and the title was quieted in D. *Held* that, under Comp. St. Neb. 1885, c. 73, §§ 57, 58, and Code Civ. Proc. §§ 77, 78, 82, 429b, the decree of the state court was valid, and impervious to collateral attack.

6. SAME—SUFFICIENCY OF AFFIDAVIT.

The affidavit for publication contained the title of the cause, showing the parties, alleged the filing of the petition, and stated the object and prayer thereof to be to declare satisfied a designated trust deed between specified parties on described premises, to secure the payment of a described indebtedness, and to quiet the plaintiff's title. The petition thus referred to alleged the assignment of the debt to H. *Held*, that the affidavit sufficiently showed the nature of the action and the relief which was sought against H.

7. AFFIDAVIT—VENUE—PRESUMPTION OF REGULARITY.

Where an affidavit in an action, though not containing a formal venue, was entitled in the court in which the action was pending, and was sworn to before the clerk thereof, who affixed his seal, *held*, that the presumption was that in the discharge of his duty he administered the oath within the jurisdiction in which he was authorized to act.

Appeal from the Circuit Court of the United States for the District of Nebraska.

This is an appeal from a decree which dismissed a bill to foreclose a trust deed of certain real estate in the state of Nebraska, given by Hamilton R. Ottman and Harriette L. Ottman, his wife, to the appellant, E. S. Ormsby, on October 6, 1888, to secure a promissory note for $4,000 and interest, made by Hamilton R. Ottman, and payable to the order of W. L. Telford, which Telford indorsed, and sold to Calvin E. Hull on December 19, 1888. The appellees. George W. Dillard and Max Einstein, pleaded and proved in answer to this bill that on December 26, 1893, Ottman and his wife conveyed the mortgaged premises, subject to the mortgage, to Dillard; that they claimed, but Hull and his trustee, Ormsby, deny, that Dillard paid the balance due on the debt secured by the trust deed in April, 1894: that in a suit to quiet the title to the mortgaged premises and to remove the cloud of the trust deed in the district court of the county of Lincoln, in the state of Nebraska, in which George W. Dillard was the complainant and the appellants, E. S. Ormsby and Calvin E. Hull, were the defendants, and in which the summons was served on the appellants, who were nonresidents of that state, by publication only, a decree was rendered on November 15, 1894, to the effect that the trust deed was satisfied and canceled, and that the title to the mortgaged premises was quieted in Dillard; and that on April 24, 1894, Dillard and his wife sold the premises for a valuable consideration, and conveyed them by a warranty deed to the appellee Max Einstein.

C. C. Flansburg, for appellant.

T. C. Patterson (B. S. Baker, on the brief), for appellee Einstein.

Before SANBORN and THAYER, Circuit Judges, and PHILIPS, District Judge.

SANBORN, Circuit Judge, after stating the facts as above, delivered the opinion of the court.

Two questions are presented in this case: Was the decree of the district court of the state of Nebraska on November 15, 1894, against the trustee, Ormsby, and his cestui que trust, Hull, to the effect that the trust deed was paid and canceled, impervious to collateral attack, and fatal to their subsequent attempt to foreclose the trust deed in the federal court? If not, was the debt secured by that deed in fact paid? The appellant insists that the first question should be answered in the negative, (1) because the state court had no jurisdiction to render a decree removing the cloud of the lien upon the real estate evidenced by the trust deed without a personal service of the summons upon the parties interested therein; and (2) because, if it had such jurisdiction, the petition and affidavit for the publication of the summons were insufficient to invoke its exercise. It is

conceded that a court of equity, without the aid of legislation enlarging its powers, has no jurisdiction to quiet the title to real estate, or to remove a cloud therefrom, without personal service of its process upon the interested parties against whom it renders its decree. Such a suit, under the old chancery practice, was a personal action, and the efficacy of the decree depended on personal service of the subpœna. It is equally well settled, however, that one of these United States has authority by the enactment of a statute to so enlarge the equity powers of the courts sitting within its limits as to confer upon them jurisdiction to adjudicate the titles and liens upon real estate within its borders as against nonresidents who are brought into court by publication only. The exhaustive and convincing discussion of this proposition and the critical review of the authorities in the opinion of the supreme court delivered by Mr. Justice Brewer in Arndt v. Griggs, 134 U. S. 316, 10 Sup. Ct. 557, have put this question at rest in this country, and left nothing further to be said upon it. Since that decision was rendered, the only question presented by a decree of the class under consideration here is: Did the state, by its legislation, confer the power upon the court to render its decree against those who were brought into it by publication only? The statutes of Nebraska which control the answer to this question in the case at bar are as follows:

"An action may be brought and prosecuted to final decree, judgment or order, by any person or persons, whether in actual possession or not, claiming title to real estate. against any person or persons, who claim an adverse estate or interest therein, for the purpose of determining such estate or interest, and quieting the title to said real estate." Comp. St. 1885, p. 483, c. 73, § 57.

"All such pleadings and proofs and subsequent proceedings shall be had in such action now pending or hereafter brought, as may be necessary to fully settle or determine the question of title between the parties to said real estate, and to decree the title to the same, or any part thereof, to the party entitled thereto; and the court may issue the appropriate order to carry such decree, judgment or order into effect." Id. § 58.

"Service may be made by publication in either of the following cases:   *   *   * Fourth. In actions which relate to, or the subject of which is, real or personal property in this state, where any defendant has or claims a lien or interest, actual or contingent therein, or the relief demanded consists wholly or partially in excluding him from any interest therein, and such defendant is a non-resident of the state or a foreign corporation." Code Civ. Proc. § 77 (Comp. St. 1885, p. 637).

"Before service can be made by publication, an affidavit must be filed that service of a summons cannot be made within this state, on the defendant or defendants, to be served by publication, and that the case is one of those mentioned in the preceding section. When such affidavit is filed the party may proceed to make service by publication." Code, § 78.

"A party against whom a judgment or decree has been rendered without other service than by publication in a newspaper, may, at any time within five years after the date of the judgment or order, have the same opened and be let in to defend;   *   *   * but the title to any property, the subject of the judgment or order sought to be opened, which by it, or in consequence of. it, shall have passed to a purchaser in good faith, shall not be affected by any proceedings under this section, nor shall they affect the title to any property sold before judgment under an attachment." Id. § 82.

"When any judgment or decree shall be rendered for a conveyance, release or acquittance, in any court of this state, and the party or parties against whom the judgment or decree shall be rendered do not comply therewith within the time mentioned in said judgment or decree, such judgment or decree shall have

the same operation and effect, and be as available, as if the conveyance, release or acquittance had been executed conformable to such judgment or decree." Id. § 429b.

These are the very statutes which were before the supreme court in Arndt v. Griggs, supra. In that case it was held that a decree under these statutes, based upon publication of the summons against nonresident defendants, who claimed a title adverse to the complainant, was valid and conclusive. In view of this decision, it is conceded that the state court had jurisdiction to entertain the suit and to render the decree against the trustee, Ormsby, and his cestui que trust, Hull, if they had or claimed an "estate or interest" in the premises described in the trust deed. The contention is that they had a lien upon those premises, that this was neither an estate nor an interest, and that these statutes gave the state court no power to adjudicate that lien without personal service of the summons upon its holders. The controversy rages over the significance of the word "interest" in the statute first quoted. The real question is whether the legislature, by the use of that word, intended to limit the power of the courts to the adjudication of adverse claims to the title only to real estate in the state of Nebraska, or to extend that power to the determination of all adverse claims against it, either by title or by lien. In support of the former construction the principles are invoked that a mortgage is a mere incident to the debt it secures (Daniels v. Densmore, 32 Neb. 40, 48 N. W. 906); that it is not a property in the thing mortgaged, nor does it constitute a right of action for it (Meany v. Head, 1 Mason, 319, Fed. Cas. No. 9,379; Ex parte Foster, 2 Story, 131, Fed. Cas. No. 4,960); that it is a mere lien or charge upon the real estate it describes for the security of the debt (Kyger v. Ryley, 2 Neb. 20, 27; Webb v. Hoselton, 4 Neb. 308, 318; Hurley v. Estes, 6 Neb. 386, 391; Davidson v. Cox, 11 Neb. 250, 9 N. W. 95; Sessions v. Irwin, 8 Neb. 5, 8; McHugh v. Smiley, 17 Neb. 620, 623, 20 N. W. 296); that upon the death of the mortgagee the debt and the lien which secures it do not descend to his heirs, but pass to his executor or administrator (Comp. St. Neb. 1885, p. 310, c. 23, § 207); that covenants which run with the land do not pass to the mortgagee before foreclosure (Davidson v. Cox, 11 Neb. 250, 9 N. W. 95); that the lien of the mortgage is not subject to levy and sale on execution, and that for the purposes of taxation the situs of the note and of the lien secured by it is the residence of the owner of the note, and not the location of the real estate (Cleveland, P. & A. R. Co. v. Pennsylvania, 15 Wall. 300; City of Davenport v. Mississippi & M. R. Co., 12 Iowa, 539, 547). Our attention is called to the fact that in one or two instances in which courts were not discussing the meaning of the word "interest" in any statute like that at bar, they remarked that a mortgage or judgment lien was no interest, estate, or title in the property itself (Daniels v. Densmore, 32 Neb. 40, 48 N. W. 906; School Dist. v. Werner, 43 Iowa, 643; Rodgers v. Bonner, 45 N. Y. 379); and it is insisted that from these principles and authorities the conclusion must be drawn that the rights of Ormsby and Hull under the trust deed constituted no interest in the real estate it described, but were mere

personal rights which could not be affected or adjudicated, under the fourteenth amendment to the federal constitution, without the personal service of the summons upon them under the rule announced in Pennoyer v. Neff, 95 U. S. 714, and similar cases. The principles referred to by counsel for the appellant are indisputable, and the decisions he cites are authoritative upon the questions they determine, but they fail to compel the conclusion he draws. He cites no case in which any court has ever held that, under a statute authorizing a suit to quiet the title to real estate against those claiming "an adverse estate or interest therein," an action cannot be maintained against one claiming an adverse lien upon it. In the cases which he cites, the courts were considering other questions, and, while their definitions of liens and interests may suggest the inference that they might apply the same construction to these terms if they were determining the question at issue here, their decisions are neither controlling nor very persuasive authority upon this question, because it was not before them, and because the reasons which should determine it were not presented to their minds, and did not control their decisions. The purpose of the construction of a statute is to ascertain the intention of the legislature in its enactment. That intention is, perhaps, best discovered by a consideration of the evil which the legislature sought to remedy, the object which they sought to attain, and the measure in which the proposed interpretations of the statute will remedy that evil and attain that object. The evil which the legislature of the state of Nebraska undertook to remedy by the statute now in hand was the insecurity and uncertainty in the titles to real estate within the borders of their state which resulted from adverse claims against it, held by those who would not press them to an adjudication. Owners of real property found that they could not sell it in the face of such claims. Purchasers would not buy impending lawsuits. They did not dare to improve it lest the adverse claimants should take both land and improvement. Yet, if the holders of these claims were not residents of their state, and did not see fit to sue to enforce them, the owners must suffer in silence, and the settlement and cultivation of the land and the growth of the cities in the state must be intolerably retarded. The object which the legislature sought to attain was certainty and security in the title to real estate within the limits of the state. They intended that this statute should be a bill of peace. They undertook to provide by it a method by which any owner of land could quiet his title to it against all adverse claims, make it safe for improvement, and secure for purchase. They enacted that any person claiming title to real estate might bring an action to quiet his title against any person who claimed "an adverse estate or interest therein." Did they mean to give the right to this action against those who claimed an adverse right in the title only, or against all who made any adverse claim upon the real estate, either by way of title or by way of lien? It is always competent to consider the consequences of a statute in order to arrive at the intention of its framers. Boyd Paving & Contracting Co. v. Ward, 85 Fed. 27; Lamar W. & E. L. Co. v. City of Lamar, 128 Mo. 188, 210, 26 S. W. 1025, and 31 S. W. 756. Which construction

most effectively remedies the evil they wished to suppress, and accomplishes the purpose they sought to attain? If suits to quiet title can be maintained under this statute against those only who make adverse claims to the title to real estate, its owners are still remediless against that vast horde of claims by judgments, by liens for taxes, by liens by mortgages, by vendors' liens, by liens of all kinds, which constitute by far the most numerous and most vexatious class of claims adverse to the owners of land; the purpose of the legislature fails of accomplishment; the evil they sought to remedy still exists; and titles to real estate must remain insecure and unsettled in the state of Nebraska as long as nonresident lienholders see fit to hold the threat of their claims against it without enforcing them. On the other hand, the word "interest" is the broadest term applicable to claims in or upon real estate. In its ordinary signification among men of all classes it is broad enough to include any right, title, or estate in, or lien upon, real estate. One who holds a mortgage upon a piece of land for half its value is commonly and truthfully said to be interested, to have an interest, in it, and it would not be true, in the common understanding of men, to say that he had no interest in it. If this word be given this significance in the statute before us, if it be given the meaning which it has in common parlance, and which it undoubtedly conveys to the great majority of those who read or hear it, the evil which the legislature sought to remedy is suppressed, a method is provided for quieting titles against all adverse claims, whether by title or by lien, and the certainty and security of those titles is assured. Moreover, the word "interest" seems to have been used by the legislature in this ordinary and broad signification not only in the section of the statute under consideration, but in other enactments. For example, in the latter part of the fourth subdivision of section 77 of the Code (Comp. St. 1885, p. 637), which provides for publication "in actions which relate to, or the subject of which is, real or personal property in this state, where any defendant has or claims a lien or interest, actual or contingent, therein, or the relief demanded consists wholly or partially in excluding him from any interest therein, and such defendant is a nonresident of the state or a foreign corporation," the word "interest" undoubtedly signifies any lien, right, title, or estate through which the defendant could be said to be interested in the property. The view of the intention of the legislature in the enactment of the statute in issue to which we incline is not without the support of respectable authority. In Foree v. Stubbs, 41 Neb. 271, 277, 59 N. W. 798, the supreme court of that state sustained a suit to quiet the title to real estate under this statute against one who claimed liens upon it for taxes adverse to the owner. A statute of the state of Indiana enacted for the same purpose as that before us authorizes an action by the proper plaintiff "against one who claims title or interest in the real estate adverse to him." Rev. St. Ind. 1888, § 1070 (Laws 1881, p. 240). In Essig v. Lower, 120 Ind. 239, 242, 246, 21 N. E. 1090, an action was sustained under this statute to quiet the title to real estate against, and to remove the lien of, a decree for the foreclosure of a mortgage which had not been exe-

cuted, and a decree was rendered upon a publication of the summons against the holder of the lien under the foreclosure decree. The contention that a suit to quiet title and to remove the cloud of a trust deed or mortgage as against the holder of a lien is an action in personam, and not in rem, and that service by publication gives no jurisdiction, which is so strenuously urged upon us in this case by counsel for the appellant, was answered by the court in that case in this way:

"It is also argued that the decree in the action to quiet title, set forth in the special finding, is in personam, and not in rem, and that the court had no power to render such a decree on publication. While it may be true that such decree is not in rem, strictly speaking, yet it must be conceded that it fixed and settled the title to the land then in controversy, and to that extent partakes of the nature of a judgment in rem. But we do not deem it necessary to a decision of this case to determine whether the decree is in personam or in rem. The action was to quiet the title to the land then involved, and to remove therefrom certain apparent liens. Section 318, Rev. St. 1881 (section 320, Rev. St. 1894), expressly authorizes the rendition of such a decree on publication."

This answer received the sanction of the supreme court in Arndt v. Griggs, 134 U. S. 316, 322, 10 Sup. Ct. 557, and any further discussion of that proposition in this case would be a work of supererogation. The statute of South Dakota provides that an action to quiet title may be maintained by a proper plaintiff "against another who claims an estate or interest in said real property adverse to him." Comp. Laws Dak. 1887, § 5449. In Clark v. Darlington (S. D.) 63 N. W. 771, the supreme court of that state held that one who claimed a lien upon claimed an interest in real estate within the meaning of that statute, and sustained an action under it to quiet the title against the holder of a lien for taxes. To the same effect are Axtell v. Gerlach, 67 Cal. 483, 484, 8 Pac. 34, Kittle v. Bellegarde, 86 Cal. 556, 25 Pac. 55, and Horn v. Garry, 49 Wis. 464, 470, 5 N. W. 897. The result is that the evil which the legislature of Nebraska attempted to remedy, the purpose which they sought to accomplish, the consequences of the two constructions of this statute proposed, and the opinions of other courts which have considered the question at issue, concur in impelling us to adopt the view that the legislature intended by the use of the words "estate or interest" to signify every right, title, and lien in or upon real estate which could be the subject of an adverse claim. Their intention evidently was to provide for the adjudication of all adverse claims to or upon real estate, to the end that the titles to it might be set at rest against all claimants. Our conclusion, therefore, is that section 57, c. 73, Comp. St. Neb. 1885, which empowers a person claiming title to real estate to bring and maintain a suit to quiet his title "against any person or persons who claim an adverse estate or interest therein," authorizes the maintenance of such a suit against any person who claims an adverse right, title, or estate in, or lien upon, the real estate in question.

The decree of the state court is, however, attacked upon the ground that, if that court had jurisdiction to entertain the suit, the petition and the affidavit for the publication of the summons were insufficient to warrant its exercise. The objections on which this attack

is based are not so grave as to require extended discussion. They will be stated and considered in their order. First. It is insisted that the petition is insufficient to authorize the decree against Hull, because, although it sets forth the original loan of $4,000 by Telford to Ottman, and the trust deed which secured it, the only allegation it contains which discloses the interest of Hull in the real estate is this: "Calvin E. Hull, defendant, claims to be the assignee for the value of the moneys due under said trust deed." But the debt was the principal thing, and the mortgage a mere incident. The lien which the trust deed secured followed the debt, and Hull's claim to be the assignee of the moneys due on the debt was a claim of the entire beneficial interest in the lien secured by the deed, and hence it was the claim of an adverse interest in the real estate. Second. It is said that the petition is insufficient because it shows that there was no claim or lien in fact under the trust deed. But the petition alleges that, while the debt secured by the trust deed was in fact paid, the deed itself stood undischarged upon the record, and evidenced an apparently valid lien, whose invalidity could be made to appear by extrinsic evidence only. When a claim to an interest in or lien upon land appears to be valid upon the face of the record, and its defect can only be made to appear by extrinsic evidence, it constitutes a cloud upon the title of the owner, which he may invoke the aid of a court of equity to remove. Crooke v. Andrews, 40 N. Y. 547; Corey v. Schuster, 44 Neb. 269, 273, 62 N. W. 470; Lick v. Ray, 43 Cal. 83. Third. It is argued that the decree is void because the affidavit for the publication of the summons contained no venue. But it was entitled in the district court of Lincoln county, Neb., and was sworn to before the clerk of that court, who affixed his seal thereto. It was the duty of that clerk to administer oaths within the jurisdiction in which the statutes of Nebraska authorized him to act. The presumption is that he discharged that duty. There is no evidence to the contrary, and this objection is without merit. Young v. Young, 18 Minn. 90 (Gil. 72); State v. Henning (S. D.) 54 N. W. 536; Reavis v. Cowell, 56 Cal. 588; Mercantile Co. v. Glenn (Utah) 21 Pac. 500; Mosher v. Heydrick, 45 Barb. 549, 553; Rex v. Emden, 9 East, 437. Fourth. The last objection to the decree of the state court is that the affidavit for the publication of the summons was insufficient, because it did not show the nature of the action, nor the relief which was sought against Calvin E. Hull. The statutes which are quoted in the earlier part of this opinion required the affidavit to state that the action in which it was filed related to, or the subject of it was, real or personal property in the state, in which a defendant had or claimed some lien or interest, actual or contingent, or in which the relief demanded consisted wholly or partially in excluding him from any interest therein. The affidavit for the publication of the summons contained the title of the cause, from which George W. Dillard appeared to be the plaintiff and Calvin E. Hull and others the defendants. It alleged that Dillard had filed a petition in the district court of Lincoln county against the above-named defendants, the object and prayer of which was to declare satisfied a certain trust deed executed by Hamilton R. Ottman to E. S. Ormsby, trustee,

dated October 6, 1888, on the following described premises, to wit, "lots 5 and 6 in Belton's subdivision of lots 5 and 6, in block 114, in the original town of North Platte, Lincoln county, Nebraska," to secure the payment of $4,000 to W. L. Telford on the 1st day of January, 1894, with 7 per cent. interest, and to quiet the title to said premises in the plaintiff. In view of the fact that this affidavit refers to the petition, which alleged that Hull was the assignee of the debt secured by this trust deed, we are unable to find any substantial ground for the objection urged to this affidavit. It clearly shows that the subject of the action was real estate, and that the relief demanded consisted in excluding all the defendants from any interest therein or lien thereon under the trust deed which it described. The decree of the state court was therefore valid, and impervious to collateral attack. The question whether or not the debt secured by the trust deed had been paid was, consequently, not open for consideration in the court below, nor is it here. The decree below must be affirmed, with costs, and it is so ordered.