### GRAFTON HOTEL CO. v. WALSH.

(Circuit Court of Appeals, Fourth Circuit.   September 15, 1915.)

#### No. 1340.

**1. Contracts ⬡⟿231—Building Contracts—Compensation—Commissions.**

Under a building contract, providing that the contractor was to furnish all the material and perform all the work in erecting the building and was to be paid the cost of the labor and material necessary, and in addition 10 per cent. thereof as commissions, the contractor was not entitled to commissions on the profit made by a subcontractor on labor and material furnished by him.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1046, 1047, 1051, 1052; Dec. Dig. ⬡⟿231.]

**2. Payment ⬡⟿41—Application—Unsecured Accounts.**

Where the owner of a building in the course of construction owed the contractor for items not used in the construction of the building, payments without direction as to application were properly applied to such items instead of on the balance due on the building, since, where one has two accounts, one of which is secured and the other unsecured, payments made without instructions as to application may be applied to the unsecured account.

[Ed. Note.—For other cases, see Payment, Cent. Dig. §§ 115–120; Dec. Dig. ⬡⟿41.]

**3. Mechanics' Liens ⬡⟿154—Notice—Form—Sufficiency—Venue.**

A mechanic's lien notice, which does not in the caption of the affidavit on which the claim is based, nor in the body of the affidavit, show in what county it was taken, nor before what officer, and with the jurat signed only "H. F., Notary Public," without stating the county or state, is not invalid, the statute providing that the affidavit shall be sufficient if in form and effect as therein required; it being presumed that the action of the official administering the oath was within his jurisdictional limits.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 261–267; Dec. Dig. ⬡⟿154.]

**4. Mechanics' Liens ⬡⟿146—Notice of Lien—Form—Date of Last Item.**

Code W. Va. 1913, c. 75, § 4 (sec. 3845), providing that every lien shall be discharged unless the lienor shall, within 60 days after he ceases to

labor on or furnish material or machinery for the building or other structure, file with the clerk of the county court of the county in which the same is situate a just and true account of the amount due him, does not require a definite statement as to the date of the last items of material furnished or labor performed, so as to conclude him thereby.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 246–252; Dec. Dig. ☞146.]

5. MECHANICS' LIENS ☞281—NOTICE OF LIEN—TIME OF FILING.

On foreclosure of a mechanic's lien, evidence *held* sufficient to sustain a finding that plaintiff furnished the last items of material within the 60 days allowed for filing the notice of lien.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 565–572; Dec. Dig. ☞281.]

6. MECHANICS' LIENS ☞291—DECREE OF SALE—PLACE OF SALE.

A decree of sale under a mechanic's lien foreclosure, merely directing the commissioner to sell the property "in the city of G." to the highest and best bidder, is not erroneous, since it will be presumed that the commissioner will advertise and sell the property in pursuance of the federal statute requiring all sales under orders or decrees of any federal court to be made at the courthouse in the county where the property is located.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 599–605, 607, 610; Dec. Dig. ☞291.]

Appeal from the District Court of the United States for the Northern District of West Virginia, at Wheeling; Alston G. Dayton, Judge.

Suit by J. J. Walsh, Jr., as surviving partner of the firm of J. J. Walsh & Sons, against the Grafton Hotel Company, to foreclose a mechanic's lien. Decree for plaintiff, and defendant appeals. Modified and affirmed.

T. S. Riley and John J. Coniff, both of Wheeling, W. Va., for appellant.

J. M. Ritz and John A. Howard, both of Wheeling, W. Va., for appellee.

Before PRITCHARD, KNAPP, and WOODS, Circuit Judges.

PRITCHARD, Circuit Judge. This is a suit in equity, brought by the appellee in the District Court of the United States for the Northern District of West Virginia, for the purpose of enforcing a mechanic's lien against certain real estate belonging to appellant and situated in the city of Grafton, Taylor county, W. Va., and on which there had been erected by the appellee for the appellant a large building known as the Willard Hotel. On August 27, 1912, notice of claim of lien was filed by appellee in the office of the clerk of the county court of Taylor county, W. Va., affidavit to notice stating balance due appellee to be $63,981.15, and that appellee had ceased to labor on or furnish material for the said building on June 30, 1912.

On December 11, 1912, appellee's bill of complaint was filed, praying process against appellant, and also against John T. McGraw and Charles R. Durbin, trustee; the last named being made defendant because of his being trustee in deed of trust on the real estate in controversy, given by appellant after the execution of the building contract with appellee, and McGraw being made defendant because

the building contract was between him, as owner, and the appellee, as contractor, though it was understood that he was acting for appellant, which had not been incorporated. With the bill are filed, as Exhibit A, B, and C, respectively, notice of mechanic's lien, building contract, and deed to appellant of real estate in controversy. On June 4, 1913, appellant's motion to dismiss bill of complaint for reasons appearing on the face thereof, which had been made on February 1, 1913, was overruled, and exceptions taken. On June 9, 1913, the joint answer of appellants was filed, and on October 28, 1913, the cause was referred, by consent, to Charles J. Schuck, special master, with directions to ascertain, state and report as follows:

(1) What sum of money is due to the plaintiff from the Grafton Hotel Company, or any of the defendants, on account of the averments, matters, and things in the plaintiff's bill of complaint.

(2) Whether the said sum of money is a lien upon the said property of the Grafton Hotel Company, described in plaintiff's bill of complaint.

(3) What other liens, if any, are on the property of the said Grafton Hotel Company described in the plaintiff's bill of complaint, and their amounts and priorities.

(4) Any other matters or things requested by any party to this suit, or that the master may deem pertinent and proper.

On March 16, 1914, the special master filed his report setting out at length therein the reasons for his findings, which findings were that:

(1) The sum of money due from the defendants to the plaintiff was $58,-615.05.

(2) Said sum is a lien on the property of the appellant in favor of the appellee.

(3) The only other lien on the property of the appellant is the deed of trust made by appellant to defendant Charles R. Durbin, trustee, on July 1, 1911, and this lien is subsequent to and follows the mechanic's lien in favor of appellee.

Exceptions were filed to the master's report, which were overruled by the lower court, and the report was confirmed, and a decree was entered in which the sum of $66,941.93, with interest from the date of decree, was adjudged to be due appellee. It was further decreed that this sum constituted a lien on appellant's property. Appellant excepted to the decree, and the case comes here on appeal.

In order that we may get a clear understanding as to the questions involved in this controversy, we deem it essential to call attention to certain provisions of the contract for the erection of the building in question. The following sections of the same relate to the questions at issue:

"Article I. The contractors shall and will provide all of the materials and perform all of the work for the erection of a hotel building at Grafton, W. Va., as shown on the revised drawings and described in the revised specifications prepared by M. A. Long, architects, which drawings and specifications are identified by the signatures of the parties hereto, and become a part of this contract."

"Article IV. The contractors shall provide sufficient, safe, and proper facilities at all times for the inspection of the work by the architects or their authorized representatives; shall, within twenty-four hours after receiving written notice from the architects to that effect, proceed to remove from the grounds or buildings all materials condemned by them, whether worked or unworked, and to take down all portions of the work which the architects shall by written notice condemn as unsound or improper, or as in any way

failing to conform to the drawings and specifications; and shall make good all work damaged or destroyed thereby.

"Article V. Should the contractors at any time refuse to supply a sufficiency of properly skilled workmen, or of materials of the proper quality, or fail in any respect to prosecute the work with promptness and diligence, or fail in the performance of any of the agreements herein contained, such refusal, neglect, or failure being certified by the architects, the owner shall be at liberty, after three days' written notice to the contractors, to provide any such labor or materials, and to deduct the cost thereof from any money then due or thereafter to become due to the contractors under this contract; and if the architect shall certify that such refusal, neglect, or failure is sufficient grounds for such action, the owner shall also be at liberty to terminate the employment of the contractors for the said work and to enter upon the premises and take possession, for the purpose of completing the work included under this contract, of all materials, tools, and appliances, thereon, and to employ any other person or persons to finish the work, and to provide the materials therefor; and in case of such discontinuance of the employment of the contractors they shall not be entitled to receive any further payment under this contract until the said work shall be wholly finished, at which time, if the unpaid balance of the amount to be paid under this contract shall exceed the expense incurred by the owner in finishing the work, such excess shall be paid by the owner to the contractors; but, if such expense shall exceed such unpaid balance, the contractors shall pay the difference to the owner. The expense incurred by the owner as herein provided, either for furnishing materials or for finishing the work, and any damage occurring through such default shall be audited and certified by the architects, whose certificate shall be conclusive upon the parties."

"Article IX. It is hereby mutually agreed between the parties hereto that the sum to be paid by the owner to the contractors for said work and materials shall be 10 per cent. commission on cost of work, which cost the contractors guarantee shall not exceed the sum of ninety thousand one hundred dollars ($90,100.00), including the 10 per cent. commission, if the work does not cost the above amount, including commission, the contractors agree to give the owner the benefit of such difference, subject to additions and deductions as hereinbefore provided, and that such sum shall be paid by the owner to contractors, in current funds, and only upon certificates of the architects, as follows: On monthly payments of 90 per cent. of the work done the previous month, the payments to be on or before the 10th of each succeeding month, as the work progresses; the balance of the 10 per cent. to be paid on the completion. The final payment shall be made within 30 days after the completion of the work included in this contract, and all payments shall be due when certificates for the same are issued.

"Article X. It is further mutually agreed between the parties hereto that no certificate given or payment made under this contract, except the final certificate or final payment, shall be conclusive evidence of the performance of this contract, either wholly or in part, and that no payment shall be construed to be an acceptance of defective work or improper materials."

It appears that a mistake was made in computing the interest on the sum of $58,615.05, the principal amount due appellee. It is admitted by counsel for appellee that this is a clerical mistake, and that the same should be corrected, which obviates the necessity of further consideration of this point.

The next question raised by the assignment of error relates to the provision in the decree which provides that the appellee is entitled to recover as costs the sum paid as a premium on liability insurance on workmen. A careful consideration of this matter impels us to the conclusion that under this contract the court below was not justified in decreeing this amount in favor of the appellee as a part of the costs incurred in the construction of the building, and that the decree of the lower court should be modified accordingly.

[1] The next question relates to the amount of commission to which the appellee is entitled. The master's report, as confirmed, fixes the commission of the appellee at $10,048.82. It is insisted by appellant that where the contractor sublets a part of the work, as in this instance, he is not entitled to a commission on the same; it being provided, among other things, in article I of the contract, that the contractor "shall and will provide all of the materials and perform all of the work for the erection of the hotel building." It is also provided in article IX that:

"It is hereby mutually agreed between the parties hereto that the sum to be paid by the owner to the contractor for the said work and materials shall be 10 per cent. commission on the cost of the work, * * * and that such sum shall be paid by the owner to contractor in current funds and only upon certificates of the architects as follows: * * * The final payment shall be made within thirty days after the completion of the work included in this contract, and all payments shall be due when certificates for the same are issued."

Article X contains the following:

"It is further mutually agreed between the parties hereto that no certificate given or payment made under this contract, except the final certificate or final paymnt, shall be conclusive evidence of the performance of this contract, whether wholly or in part, and that no payment shall be construed to be an acceptance of defective work or improper materials."

The proof shows that $155,191.98, as shown by the master's report, was the aggregate of charges (less commissions) against appellant. The item of $91,692.58 included commissions of 10 per cent., and the item of $13,190.45 commissions of 7 per cent., so that the master should have found that the appellee was entitled to commissions of 10 per cent. on $50,308.95, and 3 per cent. on $13,190.45, and instead of allowing for commissions the sum of $10,048.82, he should have allowed the sum of $5,426.61. It is insisted, therefore, that the appellant is entitled to have a balance found against him of $58,615.05, less $4,622.21. The evidence shows that part of the work done by subcontractors, and the amount paid by appellee to such contractors, as appears from the following table:

| | | Total Charges. | Commissions Included on. |
|---|---|---|---|
| (2) | Reinforced concrete, etc. | $12,340.20 | $10,381.10 |
| (3) | Brickwork, etc. | 9,895.20 | 9,000.00 |
| (5) | Ornamental terra cotta | 7,500.00 | 7,500.00 |
| (6) | Steel and iron work | 10,828.98 | 8,000.00 |
| (7) | Sheet metal work | 5,049.25 | 4,271.00 |
| (9) | Tile, marble and slate work | 8,640.65 | 7,500.00 |
| (10) | Artificial marble work | 2,960.00 | 2,960.00 |
| (11) | Plastering, etc. | 14,500.00 | 13,190.45 |
| (12) | Painting, etc. | 4,584.98 | 4,584.98 |
| (14) | Hardware, etc. | 2,268.60 | 1,600.00 |
| (15) | Electric wiring | 6,595.42 | 6,500.00 |
| (16) | Plumbing and heating | 21,224.99 | 18,435.50 |
| (17) | Mill work, etc. | 10,987.80 | 9,538.00 |
| (18) | Slate roofing | 696.00 | 696.00 |
| (20) | Revolving door | 570.00 | 570.00 |
| (21) | Metal weather strips | 156.00 | 156.00 |

$104,883.03

It further appears that the commissions on the foregoing items were 10 per cent., except $13,190.45, on which were 7 per cent. charges. Deducting this amount from the total charges, to wit, $155,191.98 (after excluding commissions), leaves $50,308.85, and 10 per cent. on this amount would be $5,030.89; also 3 per cent. commission on $13,290.45 would amount to $395.72. Inasmuch as the appellee, under the contract, was to be paid the cost of the labor and the material necessary for the construction of the building, and in addition to this amount 10 per cent. thereof as commissions, we are of opinion that the use of the term "cost of labor and material" was intended to mean such amounts as might be paid by appellee for labor and material, and was not intended to include any profit that might be made by subcontractors due by their contracts with the appellee.

In other words, it clearly appears from the contract that appellant was to pay only the cost of the labor and the material necessary for the construction of the building, and in addition thereto 10 per cent. as commissions. Such being the case, appellee would not be entitled to commissions on such labor and material as may have been allowed to the subcontractor. It appearing that a part of the charges as allowed by the master, amounting to $13,190.45, were for work and material furnished by the subcontractor, and that such contractor allowed a commission of 7 per cent. on the same, it necessarily follows that appellee would only be entitled to 3 per cent. thereon. In other words, this contract clearly contemplated that the contractor was to receive 10 per cent. on all amounts paid for material and labor, and it would be manifestly unjust to require the owner to pay double commissions for any material furnished, or labor performed. Therefore the sum of $4,622.21 should be deducted from $58,615.05, such being the amount erroneously charged as commissions.

It is also insisted that:

"The finding of the special master on the transaction arising out of the Mc-Graw $10,000 note of August 16, 1911, is clearly erroneous; the appellant being entitled to a net credit of $4,918.34 on account of this transaction, instead of nothing, as in effect reported by the master."

The questions of fact necessary to a determination of this point were found by the master, and upon which he based his conclusion. An examination of the evidence bearing upon the same leads us to the conclusion that the action of the court below in affirming the master's report as to this item was correct.

[2] It is also insisted by counsel that, inasmuch as appellant owes appellee for certain items not used in the construction of the hotel building, any payment made by appellant should be applied as a credit on any balance due on construction of the building, and should not be applied as a payment on the account of the items in question. It is not contended that at the time the payments were made appellant gave any directions as to the application of the same. It is well settled that where one has two accounts, one of which is secured and the other unsecured, that where payments on such accounts are made without instructions as to the application of the same that the party to whom the payments are made may apply the same to the unsecured

account. While this is a rule that applies generally, the Supreme Court of West Virginia, in the case of Huntington Plumbing & Supplying Company v. McGuffin et al., 83 S. E. 194, in discussing this question, said:

"While the statute gives no lien on the property of the owner for any items in an account of such subcontractor furnished beyond the period of nine months from the date of the notice served on the owner; nevertheless it gives a lien thereon for all items of the account furnished within such period of nine months and payments made and credited will be applied first to the items not covered by the lien, so as to preserve the lien for the items actually furnished within that period."

[3] It is insisted that the appellee in giving notice of mechanic's lien has not complied with the requirements of the statute. It is urged that there is nothing in the caption of the affidavit upon which the claim is based or in the jurat clause attached thereto to show in what county it was taken, nor is there anything in the body of the affidavit to show before what officer it was taken; also, that the jurat clause is merely signed "Hayward Fleming, Notary Public," without containing anything from which it can be inferred that he was a notary public of any particular state or county.

While this question has never been raised in proceedings to enforce a lien of this character, nevertheless we are of opinion that the law of West Virginia as respects affidavits generally is applicable to affidavits filed under the statute for the purpose of perfecting a mechanic's lien. In the case of Quesensberry v. Bldg. L. & S. S. Association, 44 W. Va. 512, 30 S. E. 73, the Court of Appeals of that state held that where an affidavit designated the state and county and contained the following jurat:

"Taken, subscribed, and sworn to before me this 22d day of December, 1896, in Summers county.                    **T. N. Reed, Notary Public**"

—the affidavit in question was valid.

The statute in pursuance of which this lien was filed gives the form of affidavit to be attached to a mechanic's lien. While this is true, the statute contains the further qualification that such affidavit shall be sufficient if in form and effect as therein set forth, which raises the question as to whether this affidavit is sufficient in form and effect as provided by the statute. The special master, in passing upon this phase of the question, very pertinently says:

"If the affidavit made by Walsh had contained the name of the county in the caption of the same, there would be no question under the decisions cited that it would be sufficient; but, since the name of the county has been omitted, we must look further to ascertain whether or not this omission is fatal. Nothing appearing to the contrary, it will be presumed that the official taking the affidavit acted within his jurisdictional limits; otherwise, it must be presumed that the official in question acted without his jurisdiction and therefore violated his official obligation. 2 Cyc. page 29. Young v. Young, 18 Minn. 90 (Gil. 72): Ormsby v. Ottman, 85 Fed. 492, 29 C. C. A. 295. So, also, in Goodnow v. Litchfield, 67 Iowa, 691, 25 N. W. 882, it was held that, where an affidavit was titled 'State of Iowa, County of Webster,' it appeared to have been sworn to before a notary public in Dubuque county, it was held that in absence of evidence to the contrary it would be presumed that the notary took the affidavit in his own county. In Bensimer v. Fell, 35 W. Va. 15, 12 S. E. 1078, 29 Am. St. Rep. 774, which was a suit brought to enforce

certain liens against property the question arose as to whether an acknowl-edgment to a deed of trust was good which did not show that the person making the affidavit appeared in the county before the notary; and upon consideration the court held that this did not avoid the certificate and held the same to be sufficient, holding further in this regard ‘that a substantial compliance with the statute was sufficient. In Barnard v. Darling, 1 Barb. Ch. (N. Y.) 218, we seem to have a case directly in point. In this case the jurat was as follows: 'State of New York, ——— County, ss.' The oath was signed 'O. O., Comm'r of Deeds,' without specifying the county or city for whom the person signing it was a commissioner. It appeared however, that he was in fact a commissioner of deeds for the city of Albany. It was held that the affidavit was not invalid. * * * There is no denial anywhere, so far as the defendants' case is concerned, tending to show that the notary public who subscribed his name to the affidavit in question was not in fact a notary public in Taylor county, West Virginia, or that the plaintiff, J. J. Walsh, Jr., did not make the affidavit; whereas on the other hand, the tes-timony is clear and specific as shown by the deposition of J. J. Walsh, Jr., at page 68 (77, printed record), that he is the person who made the affidavit, that it was made and sworn to at Grafton, Taylor county, West Virginia, on the 27th day of August, 1912. Under these decisions, and for the reasons given I hold, and therefore find, that the affidavit to the lien as filed sub-stantially complies with chapter 75 of the Code of West Virginia, and is therefore good and sufficient in the case before me. See the following addi-tional authorities: Hertig v. People, 159 Ill. 237, 42 N. E. 879, 50 Am. St. Rep. 162; Cox v. Stern, 170 Ill. 442, 48 N. E. 906, 62 Am. St. Rep. 385; Sullivan v. Hall, 86 Mich. 7, 48 N. W. 646, 13 L. R. A. 556."

We think the position taken by the master is fully sustained by the authorities, and under the circumstances do not deem it proper to enter into a further discussion of the same.

[4] We now come to consider the question as to whether the last work done or material furnished by the contractor was within the period of 60 days prior to the filing of the lien. It appears that the appellee's account, designated as "Exhibit A," shows that the last work was done on June 30, 1912. It is obvious that this is erroneous, the 30th being on Sunday. The appellee, in order to meet this situation in the court below, endeavored to show by testimony that material had been furnished and work had been done on the 28th day of June, 1912, and on subsequent days. However, it is insisted by appellant that appellee is bound by the last date as indicated by the lien filed, and that he cannot show a subsequent date. Appellant further insists that the last work done and material furnished on the hotel building was on the 25th day of June, 1912, and that therefore more than 60 days had expired from such date before the filing of the lien, and that the lien is therefore null and void.

This brings us to a consideration of the question as to whether the appellee is bound by the last date as shown by the lien. The law bear-ing upon this question is found in chapter 75, § 4 (sec. 3845), of the Code of West Virginia, which reads as follows:

"Every lien provided for in the second and third sections shall be dis-charged unless the person desiring to avail himself thereof shall, within sixty days after he ceases to labor on, or furnish material or machinery for such building or other structure, file with the clerk of the county court of the county, in which the same is situated, a just and true account of the amount due him, after allowing all credits, together with a description of the property intended to be covered by the lien, sufficiently accurate for iden-tification, with the name of the owner or owners of the property, if known,

which account shall be sworn to by the person claiming the lien, or some person in his behalf."

Under the provisions of this section the contractor is only required to file with the clerk "a just and true account of the amount due him after allowing all credits, together with a description of the property intended to be covered by the lien," etc. In other words, we find nothing in the statute which requires a definite statement as to the date of the last-named items of material furnished or labor performed. In the case of O'Niel v. Taylor, 59 W. Va. 370, 53 S. E. 471, the Supreme Court of that state said:

"When repairs, improvements, and additions are made to a building under contract directly with the owner, and the work prosecuted to completion, dates when the several items of work was done and materials furnished are not material, except that it must appear that the last work done and the last material furnished necessary to the completion of the work was done and furnished within sixty days before the filing and recording of the mechanic's lien."

The Supreme Court of Indiana, in the case of Jeffersonville Water Co. v. Riter, 146 Ind. 521, 45 N. E. 697, in passing upon this point said:

"A notice of intention to hold a mechanic's lien is not invalid for failure to specify when the work was done or material furnished."

Also Phillips on Mechanics' Liens, § 353, among other things, states:

"If a statute giving the lien does not require the notice to itemize the work or materials, it will not be necessary."

[5] The last item is a charge for hauling a certain amount of terra cotta and a half day's work for setting the same. The witness Walsh, in testifying in regard to this transaction, said:

"That on the side of the hotel building, near the stairs that led up from the platform, they were short about three pieces of terra cotta. They received this terra cotta on the 28th of June, 1912, it was delivered to the building, and in anticipation of setting of the terra cotta, witness, in making up his bill, rendered a bill for the hauling of the terra cotta, and also made an allowance for a half day's time for a bricklayer to do the work. The fact is that it was not set on the 28th, as the plaintiff neglected to notify bricklayer and foreman; foreman attended to this matter, and the work was done in the week of July, somewhere in July 6th and 11th."

It also appears from the testimony of witness Standiford that the terra cotta was set on the 11th day of July, 1912, as indicated by the time sheet. In addition to these facts, we have the findings of the master. Indeed, it is admitted by counsel for appellant in their brief that there was testimony in the court below that work was done in the early part of July. The evidence as to this point, to say the least of it, is conflicting, and the master having found in favor of the appellee, and his findings having been confirmed by the court below, we are not inclined to disturb the same.

[6] It is also insisted by counsel for appellant that:

"The part of the decree of sale directing the sale by the special commissioner to be made 'in the city of Grafton, Taylor county, West Virginia,' instead of at the front door of the courthouse of said Taylor county, or on the prem-

ises, is clearly obnoxious to United States statutory provisions in reference to judicial sales of real estate."

The decree directs the commissioner to sell the property in the city of Grafton to the highest and best bidder, and we must assume that the commissioner will advertise the property in pursuance of the federal statute, which is in the following language:

"That all real estate or any interest in the land sold under any order or decree of any United States court shall be sold at public sale at the courthouse in the county, parish, or city in which the property, or the greater part thereof, is located, or upon the premises, as the court rendering such order or decree of sale may direct."

In view of what we have said, the decree of the lower court should be modified as follows: (a) So as to correct the mistake which was made in computing interest on $58,615.05, the principal amount due appellee; (b) the sum of $698.26 allowed by the master for liability insurance should be disallowed; (c) the sum of $4,622.21, being the amount erroneously charged as commissions, should be deducted from the amount allowed as commissions.

The decree as thus modified is affirmed.

Modified and affirmed.