[Civ. No. 8335.   Third Dist.   Aug. 4, 1954.]

MANUEL SMITH et al., Respondents, v. EMPIRE SANITARY DISTRICT, Appellant.

Gant & Badger, Vernon F. Gant and Carlos J. Badger for Appellant.

Leonard A. Worthington for Respondents.

VAN DYKE, P. J.—This is an appeal from a money judgment against appellant in the sum of $11,587. The judgment also denied relief sought by appellant by cross-complaint. The action arouse out of a construction contract entered into between appellant district, as owner, and respondent, as contractor. Respondent, Manual Smith, filed action, alleging that the district had breached its contract with him. The subject matter of the contract was the construction of a sanitary sewer in the town of Empire. It was admitted in the pleadings that a contract had been executed; that respondent had commenced the performance thereof in May of 1949 and had continued such performance through May, June and into July. Respondent alleged that he had performed services and supplied labor and furnished material in the sum of $49,281.94; that he had not been paid that portion of the amounts earned as fixed by the terms of the contract and that for such breach he was compelled to and rightfully did cease work. The contract contained the following provision:

"(a) Not later than the 15th day of each calendar month the Owner will make a partial payment to the Contractor on the basis of a duly certified and approved estimate of the work performed during the preceding calendar month under this Contract, but to insure the proper performance of this Contract, the Owner will retain ten (10) percent of the amount of each estimate until final completion and acceptance of all work covered by this Contract: . . .

"(b) In preparing estimates, the material delivered on the site and preparatory work done may be taken into consideration."

The controversy revolves around charges by the contractor that the owner through its engineer arbitrarily withheld progress payments due and that this withholding was motivated by bad faith of the district and its engineer, both of whom the respondent claimed embarked at once upon a course of conduct designed to run the contractor off the job.

The court found that while he was on the job the contractor furnished materials and rendered services to the district of the reasonable value of $28,969.55; that he had received payments totaling $17,382.18, and that the balance of $11,587.37 was owing and unpaid; that the district's engineer prepared estimates of the work performed while it was going forward and was fully cognizant of the reasonable value thereof; that by the 15th of July, 1949, the sum of $23,175.65 was due, owing and payable from the district to the contractor and that this sum amounted to 90 per cent of the labor and materials which had been furnished by respondent on the job during May and June; that the appellant, acting through its engineer, had arbitrarily neglected and refused to certify the proper amounts for payment as provided by the contract and that appellant had knowingly withheld from the respondent greater amounts than authorized by the contract; that these excessive withholdings were made because the appellant had been without adequate funds to pay respondent the sums which were justly due him; that on June 22d respondent was paid $7,998.90 on account of work done during May; that on July 13th respondent was paid $9,883.28 on account of work done during June; that during those two months respondent performed work and furnished materials to the value of $25,493.21 and was entitled to be paid on account thereof $23,175,65, whereas he received in fact only $17,382.18, leaving a deficit of $5,793.47 due him at the end of those two months, after the making of just allowance for rightful withholdings; that on or about July 15th respondent had properly demanded payment of the sums so due and unpaid and that payment thereof had been refused; that by reason of such breach respondent had been prevented from continuing his work or completing the job and was now entitled to all sums withheld from the total earned; that respondent had given notice to appellant that unless the sums justly due were paid he would consider the contract breached and cease work; that he did

cease work during July and that on September 1st he demanded the payment of all sums earned. The court made findings adverse to appellant's claims that it had paid to respondent all sums justly due and that it was he who had breached the contract by leaving the job. The court specifically found that appellant and its engineer and other authorized representatives had been guilty of acts of carelessness, negligence, arbitrary decisions and unreasonableness which forced the respondent to leave the work; that appellant had arbitrarily withheld amounts in excess of those which the contract permitted to be withheld and so breached the agreement and justified respondent ceasing his performance. Judgment was rendered as hereinabove stated and from the judgment this appeal is taken.

Primarily, this appeal presents the question of substantial support for the court's factual findings above recited. The trial was lengthy, the documentary evidence received was voluminous, the testimony of the witnesses was grossly conflicting and the situation was shown to be one where from the very beginning the parties became antagonistic. In his first certificate, dated June 22d and covering the work of May, the engineer stated that labor and materials had been furnished to the total value of $13,331.50. He authorized payment of $7,998.90, which was 60 per cent of the stated value and his explanation was ''Retention of 40% is recommended in lieu of incomplete work and clean-up not being made.'' Respondent considered that this retention of 40 per cent was unjustified. He said, however, he considered the estimates of work done to be sufficiently accurate for progress payment purposes and made no formal protest, expecting the matter would be adjusted when the next payment was made. On July 13th the engineer made his second certificate, stating that the value of work and materials furnished during June amounted to $15,638.05 and he recommended payment of 60 per cent thereof amounting to $9,383.28, with the explanation that ''Retention of 40% is recommended in lieu of incomplete work and clean-up not being made.'' We have said that the engineer stated the values for the work of May and June. Neither certificate specifically states what period is covered, but the court found they did cover the work of May and June, respectively, and the record supports that finding, which is in harmony with the provisions of the contract. This time respondent objected violently to what he claimed were excessive and wholly unjustified withholdings. He stated the necessity

which compelled him to insist that the payment provisions of the contract be kept and informed the appellant that if the excess of withheld money was not paid within 48 hours he would consider the contract breached and cease work. ▊ Somewhere during this period of stress the following things were shown to have happened: The engineer, in response to a complaint about excessive withholdings, said to respondent's foreman that he was in a frame of mind that he did not give a ''damn'' whether they got any money at all or not; that a representative of the district under similar circumstances stated in effect that the withholdings were compelled because the district had no money to pay more. The engineer denied the statement and the frame of mind indicated thereby and much evidence, documentary and testimonial, was taken in an attempt by the appellant to show that it either had on hand, or had available, sufficient funds to pay all just demands and that the withholding was in no part chargeable to its lack of funds. However, it did not have money enough on deposit so it could have paid at the rate that would have been necessary had the work progressed steadily, without greater withholding than the 10 per cent specifically provided to be withheld in any event. The evidence was greatly in conflict as to the propriety of any greater withholding, the engineer contending and testifying not only that the work was incomplete and the withholding proper for that reason, but he belatedly claimed other reasons for withholding, such as work improperly performed. As to these matters also the respondent introduced evidence, conflicting with that of the engineer, to the effect his work had been properly done and that there existed no reason for withholding more than the fixed 10 per cent. He calls our attention to the fact that there was on file a faithful performance bond and a labor and materials bond as required by statute. It was shown that when the bids were opened and it appeared respondent was the low bidder appellant consulted with the engineer as to possible means of avoiding a contract with respondent because it had been said other owners had gotten into difficulties with him. The engineer advised there was no legal escape from giving him the contract, though saying that engineering and inspection costs would be increased beyond normal with respondent on the job. Perhaps the most persuasive showing in support of the court's finding that the withholdings had been arbitrary on the part of appellant and its engineer is to be found in the engineer's certificates themselves. After the second certificate had been made, and re-

spondent had informed the appellant in writing of his claim that the withholdings were unjustified and the withheld money necessary to the continuance of his work to a point where unless more money was paid he would have to cease work, the engineer furnished a third certificate dated July 19th, wherein he stated that the total value of work done was the same as that stated in his second certificate, to wit: $28,969.55; but he said that figure carried the work up to July 9th instead of only June 30th. He changed his withholdings from 30 per cent to 15 per cent over the fixed 10 per cent. He gave no reason whatever for the change, nor did he state what the 15 per cent was for. In this way he came out with a result authorizing an additional payment of $4,344.98. This sum was tendered and was rejected. Thereafter and on August 8th the engineer got out still another statement. In this one he said the value of work done during May was $8,666 with withholdings of 20 per cent and the amount due $6,928. Since respondent had been paid for May's work the sum of $7,998.90, this certificate showed he had been overpaid for that period. The engineer proceeded to state that the work done during June amounted to $10,377.35, whereas his certificate for June had stated the work done in that period was $13,728.26. He withheld 10 per cent for inadequate backfill in addition to the fixed 10 per cent retention. The result was that this certificate showed respondent to have been overpaid for June as well as for May. Coming to July, the engineer stated that the total work done during that month (he did not fix the days during which it was done) had amounted to $7,877.95. He retained the fixed 10 per cent and 10 per cent more for "inadequate backfill"; he subtracted overpayments for May and June and found that for all work done respondent had $4,150.06 coming, the retentions considered. That amount was tendered and rejected. Respondent had left the job July 22d. As the trial court said in the memorandum opinion that appears in the record: "With a few more estimates like the one of August 8th the contractor would not have had any work done." Significant, too, is the conflict between the cause for withholding stated in the various certificates (which do not agree with each other upon the subject) and the testimony of the engineer who gave still other reasons to justify his withholdings. Illustrative of the engineer's testimony is the following: He had withheld 30 per cent in excess of the fixed 10 per cent for incomplete work, clean-up and other reasons; that he had withheld because of "unbalanced bid"; that he had withheld for inade-

quate backfill and jetting; that some of the money was withheld to take care of the intangible question of whether respondent would complete the job; that on July 13th he was afraid respondent would not complete the job and he might have given him 10 per cent more otherwise. He said that the 30 per cent was withheld because the work was only 70 per cent complete and the withholding actually represented the deduction of the amount of work that was not done. (This compared with appellant's inspector's reports which never contained any statement that there were defects or incomplete work on the job. No written notices of defects were given respondent.)

Respondent's foreman in charge of the work attended a meeting of appellant's board and protested the 30 per cent withholding. He asked the board if it had the money to pay what was due and the reply was negative. Several members of the board so stated. Said the witness: "The substance of the comments made by the board at that time shows they didn't have the funds available." The chairman of the board testified that at that meeting someone had said: "No, we haven't got no money in the bank. We couldn't pay you if we wanted to." The foreman testified that on the day following the board meeting he was on the job and talked to the engineer and asked him for the reason why the extra 30 per cent was withheld. The engineer replied: "The way I feel today I don't give a continental damn if you ever get anything." The foreman walked away, then came back and heard the engineer say to a subordinate: "They are entitled to more money. We are going to have to get more money. What is the matter, don't they have the money? The subordinate said, "No, I don't think they have," and the engineer said, "Well, we will have to make arrangements to get the money, to get additional financing." The foreman said that on the 15th of July he delivered the letter, demanding proper payment on pain of declaring a breach if it was not received, and no reply being made, they completed the work that had been started and left the job.

We have referred to enough to show that the evidence supports the court's finding the appellant "acting through its Engineer unreasonably and arbitrarily neglected and refused to certify or approve the proper amount for payments as provided by said contract and that said Defendant knowingly withheld from the Plaintiff greater amounts than was provided for by said contract because at the time that said payments were due it was without adequate funds to pay the

Plaintiff the sums which were justly due him." This finding so supported is tantamount to a finding that the appellant and its engineer withheld money in bad faith and for an ulterior purpose; that the certificates issued were knowingly false and fraudulent. Such conduct constituted a material breach of the contract and justified respondent in ceasing further performance and bringing action in quantum meruit for the money earned.

Appellant contends that the engineer's estimates actually favored respondent and that its proof of the amount of work done "not contradicted by the contractor" was binding on the trial court. As we have said, the evidence in this case is grossly conflicting throughout. Respondent here is referring to errors of one sort and another appearing on the face of the various certificates and testified to by appellant's witnesses. But there was testimony by respondent that as to the amount of work done the first two certificates were approximately correct. The trial court in its memorandum opinion referred to many of these conflicts and it is apparent that it both accepted and rejected parts of the testimony in support of both sides to the controversy. It is not for this court on appeal to say the trial court should have believed one witness over another.

Appellant contends that even if it paid less than it should have paid during the progress of the work, it would have been guilty of no breach since the respondent made no specific demand for payment. This contention cannot be sustained. The engineer's estimates of the value of work done and materials furnished set the gross amount earned and there was no quarrel between the respondent and appellant upon that point while respondent was on the job. The controversy was over the fact that the engineer arbitrarily and falsely, as found by the court upon substantial evidence, withheld money due under the contract's terms as to progress payments.　█　It was not necessary for the contractor to make any specific demand that he be paid the gross amount shown to have been earned by the engineer's estimate, less proper and honest withholdings. Furthermore, he did give notice that these withholdings were excessive, that the proper amount of money would have to be paid to him or he would cease work and that demand was refused. Under the circumstances the claim of appellant that it did not breach the contract cannot be supported for want of any specific demand.

Appellant asserts that an engineer's estimate certifying

to the parties the amount of progress payments to be made is conclusive in the absence of fraud, and appellant cites many authorities in support of this admitted rule, but the rule has no application here where the court made a finding, supported by evidence, that there was fraud practiced upon respondent through the engineer's estimates and that this fraud had been participated in by the appellant. Appellant contends that respondent admitted the engineer rightfully withheld more than the fixed 10 per cent. ■ This admission is supposed to have been contained in a letter written by respondent's attorney sometime after the court's memorandum opinion had been filed. We will not follow respondent's argument as to the letter being in effect a stipulation or admission. It was not introduced in evidence nor entered in the records in any way so that it can now be relied upon. If it had been deemed material respondent should have taken steps to reopen the case and make to the trial court the arguments he now makes to this court on appeal.

Appellant contends that it had a right to withhold all the amounts which it did withhold because of a provision in the contract reading as follows:

"The Contractor shall pay . . . (b) for all materials, tools, and other expendable equipment to the extent of ninety per cent (90%) of the cost thereof, not later than the 20th day of the calendar month following that in which such materials, tools, and equipment are delivered at the site of the project, . . . and (c) to each of his Subcontractors, not later than the 5th day following each payment to the Contractor, the respective amounts allowed the Contractor on account of the work performed by the respective Subcontractor, to the extent of such Subcontractor's interest therein.

. . . . . . . . . . . . .

"In addition to the amount which the Owner may otherwise retain under the Contract, the Owner may withhold a sufficient amount or amounts of any payment or payments otherwise due to the Contractor, as in its judgment may be necessary to cover:

"(a) Payments which may be past due and payable for just claims against the Contractor . . . for labor or materials furnished for the performance of this Contract.

"(b) For defective work not remedied.

"(c) For failure of the Contractor to make proper payments to his Subcontractors."

Arguing in support of this contention appellant says the evidence at the trial showed that there were bills for material delivered to the job site which were not paid for until after the respondent had ceased work, and appellant says that it may now justify its withholdings by reason of that situation. The contention cannot be sustained. The withholding permitted is clearly stated to be such amounts as in the judgment of the owner may be necessary to cover payments past due, etc. It is clearly apparent from this record that at no time did appellant or its engineer assert that it was exercising its judgment as to necessary withholdings for these matters and that it was making its withholdings upon that ground. It was a right which it could have exercised had it elected to do so, but its failure to inform the respondent that it was doing so amounted, so far as the progress payments in controversy are concerned, to a waiver of that right to withhold. It was not made to appear that appellant asked for any report as to sums owing by respondent under these contract provisions or that it ever told respondent it was withholding for unpaid bills. Its attempt long after the contractor had ceased to perform to justify its withholdings under these provisions comes entirely too late. Furthermore, this contention ignores the basic findings of the trial court as to the justification for cessation of work by respondent, that is, that for the ulterior purpose mentioned in the findings appellant and its engineer had knowingly and arbitrarily withheld moneys for work done because the district was without funds to meet proper charges, basing the retentions upon false reasons. It is always the obligation of parties to contracts, to deal fairly and honestly with each other. The fraudulent conduct of appellant and its engineer constituted such a material breach of its duty of good faith that it could not, after the contractor had ceased work, nullify the effect of its misconduct by showing that it might have had reasons to retain moneys which it did not in fact retain for such reasons. If appellant wished to exercise a right of retention under these provisions of the contract relating to the payment of his bills by respondent it was incumbent upon appellant to inform respondent that it was electing to retain money for these reasons and that in its judgment a certain retained amount was necessary for such purposes.

Appellant contends that the trial court erred in computing the amount withheld from the contractor which was in fact justly due, that in fact only a much smaller amount was due and that for that reason the breach of the contract of which

appellant was found guilty was not a material one. He cites Restatement of Contract, section 275, which lays down rules for determining the materiality of a failure to perform and declares the following circumstances to be influential:

"(a) The extent to which the injured party will obtain the substantial benefit which he could have reasonably anticipated;

"(b) The extent to which the injured party may be adequately compensated in damages for lack of complete performance;

"(c) The extent to which the party failing to perform has already partly performed or made preparations for performance;

"(d) The greater or less hardship on the party failing to perform in terminating the contract;

"(e) The wilful, negligent or innocent behavior of the party failing to perform;

"(f) The greater or less uncertainty that the party failing to perform will perform the remainder of the contract."

We need not follow appellant through its discussion of this contention. ▪ The materiality of a breach is in the main a matter for the trial court to determine from all the facts and circumstances shown in evidence. (*Gold Min. & Water Co.* v. *Swinerton*, 23 Cal.2d 19, 28 [142 P.2d 22]; *Campbell* v. *Hauser Lbr. Co.*, 147 Wash. 140 [265 P. 468, 470]; Williston on Contracts, rev.ed., § 841 n. 4.) We may refer to the circumstance, which the court undoubtedly considered, that is, the one having to do with the wilful, negligent or innocent behavior of the party failing to perform. As to this, the appellant says: "There can be no question but that the District was innocent of any intention to inconvenience Manuel Smith, not to mention the entire absence of any intention to defraud Manual Smith." Appellant's quoted statement ignores completely the force and effect of the court's findings as to its conduct in the matter. Its conduct was justifiably found to have been anything but innocent. We hold that the court was justified in determining that the appellant's breach of its contract was material and justified the cessation of work by the respondent.

The judgment appealed from is affirmed.

Peek, J., and Schottky, J., concurred.

A petition for a rehearing was denied August 31, 1954, and appellant's petition for a hearing by the Supreme Court was denied September 30, 1954.