[Civ. No. 17083.   First Dist., Div. Two.   Mar. 19, 1957.]

OTIS W. VOWELS et al., Respondents, v. ALBERT J. WITT et al., Appellants.

John J. Fahey, Jr., and Herbert Chamberlin for Appellants.

Arvin O. Robb for Respondents.

KAUFMAN, J.—Defendants appeal from a judgment of the Superior Court of San Mateo County decreeing foreclosure of a mechanic's lien in favor of plaintiffs and respondents for $38,002.31 against certain real property owned by appellants, together with interest and costs.

The amended complaint alleged that plaintiffs Vowels and Rossi, copartners, doing business as the Calor Construction Company, duly licensed contractors, entered into a written agreement with defendant Albert J. Witt, on or about September 1, 1953, whereby they agreed to furnish the material and erect for defendants a certain group of buildings upon land thereafter described in said complaint; that Albert J. Witt as owner of said property agreed to pay all costs for material furnished and labor rendered for construction of said building, "including all costs of any subcontractors engaged by plaintiffs, cost of insurance, permits, Federal and State taxes including Federal and State tax on wages paid, plus ten (10%) per cent of the total cost as a contractor's fee"; that costs under said agreement were to become due and owing after billing by the contractor for all costs incurred during any preceding calendar month, and were to be payable immediately.

It was alleged that between September 1, 1953, and March 4, 1954, at the special instance and request of defendants, plaintiffs performed work and furnished material to alter the existing buildings on the property, for which defendants agreed to pay under the same terms as contained in the written contract referred to above; that plaintiffs completed said contract in accordance with its terms, consisting of one duplex rental unit, one fourplex rental unit, and completed the remodeling as requested of an existing duplex unit; that said work was completed by March 4, 1954, and pursuant to billings rendered defendants there was due and owing $89,308.22 of which sum $43,312.10 had been paid, leaving a balance of $45,996.12; that this balance is distributable as follows: $1,066.20 due for remodeling of one unit of the existing duplex, $6,788.36 due for remodeling of the other unit of said duplex, $3,227.43 due on construction of the new duplex,

and $32,227.43 due on construction of new fourplex. A later paragraph alleged the amounts of the balances believed to be due at the time notice of lien was filed, and prior to an audit of plaintiffs' records, which figures differed on each of the above units, some being more following the audit, and others, less.

Defendants and appellants denied generally most of the charging allegations of the complaint, affirmatively alleged that the work provided for in said contract was not completed in a workmanlike manner, was defective in many particulars and not up to the standard or in accordance with the terms of the agreement. They alleged that prior to the execution of the written agreement concerning the duplex and fourplex, and prior to the oral agreement respecting the remodeling job, plaintiffs fraudulently misrepresented to defendants that the total cost, including the contractor's 10 per cent profit, would be $55,700; that they fraudulently misrepresented that they were qualified contractors and estimators, and that Rossi was a qualified architect, that relying upon said representations they entered into the written and oral agreements. It was alleged that when said work was fully completed in a workmanlike manner, there would be owing from defendants to plaintiffs the sum of $12,387.90; that the cost of completing the work and correcting unworkmanlike features would be the sum of $3,500. Defendants therefore prayed that judgment be entered against them for the sum of $8,887.90 and no more.

Appellants, Mr. and Mrs. Albert J. Witt, owned real property on University Drive and Alice Street, Menlo Park. They occupied one apartment in a duplex at 625 University Drive. They entered into negotiations with plaintiff and respondent Rossi concerning the construction of another duplex and a fourplex on the above parcels of property for income and investment purposes. A written agreement was eventually entered into on or about September 1, 1953. This contract was a cost plus type of contract, the contractor's fee being 10 per cent of the total costs of construction. Remodeling of the duplex on the University Drive property was also undertaken by respondents under an oral contract similar in terms to the written contract covering construction of the new buildings.

In order to finance the construction, appellants borrowed certain sums of money, and subdivided the property into two parcels, parcel one consisting of the land improved by the old duplex and the land on which the new duplex was to be built. A construction loan of $13,500 was obtained on this

parcel, and on the security of parcel two which was to be improved by the fourplex, appellants borrowed $25,000 from the San Francisco Bank on a FHA construction loan. The new duplex was completed before the end of 1953. The four-plex was under construction in November, 1953. Specifications for this building were submitted to and approved by the FHA. Notice of completion of the fourplex was filed by appellant Albert Witt on or about March 11, 1954.

According to respondents' evidence, the cost of the new duplex was $23,255.11 of which $20,027.68 had been paid, leaving a balance owing of $3,227.43. Appellants' expert witnesses testified that the fair and reasonable cost of reproducing the duplex was between $15,249 and $17,459.39. Respondents' evidence showed the cost of the fourplex to have been $49,-361.63 of which $14,447.50 had been paid, with a balance of $34,914.13 still due and owing. The testimony of appellants' experts placed the fair and reasonable cost of reproducing the fourplex between $35,140 and $35,997.87.

The remodeling project on the old duplex was undertaken at the same time that the fourplex was under construction. Respondents' evidence showed that the cost of remodeling apartment Number 1 had been $9,903.12 of which $7,836.92 had been paid; the cost of apartment Number 2, $6,788.36, all of which had been paid. Appellants' experts estimated the fair and reasonable cost of reproducing Number 1 between $7,031.66 and $8,170 and Number 2 between $4,373.66 and $4,762.

Appellants had been billed for $35,536.57 up to January 20, 1954. After that time bills for $52,144.82 were submitted by respondents. On February 16, 1954, upon receipt of a payment of $14,000 from appellants, respondents wrote appellants that they had credited the payment in such a manner that no balance was owing on the new duplex or the remodeling job. This allocation respondents later found to be incorrect.

Certain subcontracts for electrical, plumbing and roofing work were made betweeen respondents and the subcontractors on a cost plus basis. Appellant Witt testified that respondent Rossi had told him that respondents' customary practice was to let such contracts after obtaining several bids from competing contractors.

Appellants seek a reversal of the judgment on the ground that the evidence does not sustain the finding that respondents substantially performed their construction contracts with appellants. They appear to argue first that good faith of the

respondents is a prerequisite to their recovery in a court of equity, citing *DeGarmo* v. *Goldman,* 19 Cal.2d 755 [123 P.2d 1] ; *Nelson* v. *Abraham,* 29 Cal.2d 745, 750 [177 P.2d 931], and *Smith* v. *Empire Sanitary Dist.,* 127 Cal.App.2d 63, 72 [273 P.2d 37]. Appellants in their answer affirmatively pleaded fraudulent misrepresentations of respondents in inducing them to enter into a contract in which the total costs would not exceed $55,700. On conflicting evidence, the trial court decided this issue against appellants. Insofar as the element of good faith is in issue where fraud is alleged as a defense it may be said that such issue was determined in favor of respondents. The trial court found that whatever errors were made in the accounts were not wilfully made, that some were in favor of respondents and some in favor of appellants, that such errors were not made with intent to deceive or defraud. Appellants do not attack this finding as unsupported, nor could they do so in view of the record.

Findings V and VI are attacked as unsupported by the evidence. Those findings read as follows:

## "V.

"In the construction of the new buildings and in the remodeling of the existing duplex, some work was not completed and some was not done in a workmanlike manner. As a whole, however, all these items were minor in relation to the entire work done, and as a whole plaintiffs have substantially performed their contract with the defendants. That as substantially completed, each unit in the buildings constructed has been occupied and income producing. As to the work not completed and the work not done in a workmanlike manner, the defendants are entitled to credit for these minor imperfections. However, in view of the voluminous record in this case and the great difficulty in itemizing the numerous amounts involved and to give credit to defendants for the minor items of work not completed, the minor imperfections of construction, and to determine the reasonable cost of each item of labor rendered in the construction of the various housing units and the reasonable cost of each item of material furnished, the Court finds that although the actual cost to plaintiffs of all such items, including the actual cost paid to subcontractors, plus the contractors fee of 10 per cent, is in excess of $81,534.41, the court further finds that the reasonable cost for all labor rendered and the reasonable cost of all items of materials furnished plus a contractors fee of 10 per cent

thereof, for all work done and completed in accordance with the contract is the sum of $81,534.41 and that the reasonable value of all work done and completed in accordance with the contract is the sum of $81,534.41 and the court further finds that the work done and as completed constitutes a substantial compliance with the contract as entered in between plaintiffs and defendants.

## "VI.

"The defendants have paid to plaintiffs the sum of $43,-512.10 and that plaintiffs are entitled to recover from defendants, the sum of $38,022.31 wth interest from March 18, 1954 at the legal rate."

The written contract herein contained a provision that the contractor "shall bill the owner for all costs incurred during the preceding calendar month, and all amounts so billed shall be immediately due and payable." Appellants based their defense upon the charge that respondents fraudulently induced them to enter into their contract on the representation that the costs would be a certain sum, but did not plead any defense in relation to delayed billings. There was some evidence that bills were not always promptly presented in the month just following the date when costs were incurred. Appellants were present during the progress of the work and respondents' records were open to them for their inspection. The final billings necessarily included numerous very expensive items such as refrigerators, washing machines, electrical installations and window shades. Appellants say that because of delays in billings they were faced with a bill almost double that which they anticipated. Although appellants assert that the total cost should have been $55,700 and therefore admit owing but $8,887.50, their own experts gave a total estimate for the three projects ranging between $61,794.32 and $66,389.26. ■ The fact that the bills were not always furnished promptly, should not be sufficient reason for holding that the contractor did not substantially perform the contract under the circumstances here present, where the owner could check constantly on the progress of the work and could readily determine whether or not he needed further financing than he had first arranged, and where he acquiesced in the rapid completion of the project, filing notice of completion of the four-plex so that it would be immediately available for rental.

■ Appellants argue that under the contract respondent should be allowed to recover only the costs of labor and material furnished by subcontractors, but not the profit made by

such subcontractors. They state that such profit cannot be recovered because respondents led them to believe that they would follow their customary practice of asking for competitive bids from subcontractors, whereas in certain instances they subcontracted work on a cost-plus basis. And further, the terms of the written contract allows respondents 10 per cent of the cost of labor and materials. In *Grafton Hotel Co. v. Walsh*, 228 F. 5, 10 [142 C.C.A. 461], it was held that the cost of labor and materials plus 10 per cent did not include the subcontractor's profit. One paragraph of the contract herein quoted by appellants on page 11 of the brief reads as follows: "The costs for construction payable to contractor shall be the total cost of all materials used in and labor rendered for the construction of said residential structures, including all costs *and profits* of any subcontractors engaged by the contractor." (Emphasis ours.) There is nothing in the written contract that requires subcontractors contracts to be made after competitive bidding, and the record does not indicate that in the instances where the cost plus plan was used the work was more expensive than it would have been if bids were received.

The contract, appellants say, precluded the charging of overhead as costs, but nevertheless the court allowed such items for supervision, maintenance, payroll taxes, insurance, welfare fund and utilities. The contract, as quoted by appellants' brief, states: "The costs shall include the cost of insurance, permits, federal and state taxes of wages paid, supervision plus no per cent for overhead costs . . ." Clearly, most of the above items of which appellants complain, were included as part of the costs and were specifically excluded from the classification of overhead costs by the contract.

In cost-plus contracts, as a general rule, premiums for workmen's compensation insurance, social security and labor taxes, hauling, storage and operating expenses resulting from the use of equipment are reimbursable costs and not overhead. (See *House* v. *Fissell*, 188 Md. 160 [51 A.2d 669]; *Citizens State Bank* v. *Gentry*, 20 Cal.App.2d 415 [67 P.2d 364].)

There is no merit in appellants' argument that appellants who had not breached their contract were left to complete the contract and remedy the defects no matter what the cost might be. Respondents presented evidence to establish that the costs of construction plus 10 per cent amounted to $89,308.22. The trial judge found that there were certain minor imperfections in the work, that while the costs plus 10

per cent to the contractor were in excess of $81,534.41, that sum was the reasonable value of all work completed under the contract, and that the contract was substantially performed. The court specifically found that it had arrived at this figure, after an examination of the voluminous record, which provided for credit to appellants for the minor imperfections in construction.

It is contended the respondents were not entitled to a mechanic's lien upon either or both of the parcels of real property, and that it was error for the court to decree judgment of foreclosure and sale of both parcels of property to satisfy payment of amounts, some relating to one parcel, and some to the other. Appellants cite in support of this statement, section 1195.1 of the Civil Code. That code contains no such section number. Section 1195.1 of the Code of Civil Procedure is concerned with separate residential units. Apparently, section 1194.1, Code of Civil Procedure, is the applicable section. That section requires that the claimant must designate the amount due on each building where the claim covers multiple improvements. That was done in the present case. ▮ Furthermore, only the one lien claimant is here involved, and it was held in *Kritzer* v. *Tracy Engineering Co.,* 16 Cal.App. 287 [116 P. 700], that where there are no other lien claimants whose rights could be affected, the owner has no cause for complaint if the amounts distributable to each parcel are not segregated.

The final contention is that interest should not have been allowed from the date that the claim of lien was filed, but only from the date of judgment declaring the fair and reasonable value of the work and materials, citing *Broderick* v. *Torresan,* 88 Cal.App.2d 18, 22 [198 P.2d 75] and *Associated Wholesale Elec. Co.* v. *S. H. Kress & Co.,* 11 Cal.App.2d 592 [54 P.2d 38]. In *Broderick* v. *Torreson, supra,* the dispute was concerned with interest on extras furnished by the contractor, and the defendants there admitted that as to materials and labor furnished pursuant to the contract, interest was allowable from the date the money became due. *Associated Wholesale Elec. Co.* v. *S. H. Kress & Co., supra,* was a suit by a creditor of a subcontractor against the owner of a building where the lien was filed against the owner for the reasonable value of the labor and materials, and not for a sum due under a contract with the owner. In *Combs* v. *Eberhard,* 120 Cal.App. 25, 30 [7 P.2d 338], it was held that interest on items furnished pursuant to the contract between the prime con-

tractor and the owner was properly allowed from the date of completion of the work, but that as to extras, the reasonable amount must be determined by the court, and that interest on such items, as well as on amounts claimed by other parties for materials furnished to the contractor, must bear interest from the date of judgment. ▪ The judgment herein was entirely for items furnished in accordance with the contract, with a deduction allowed appellants for minor imperfections, hence interest was properly allowed from the date on which the lien was filed.

No prejudicial error appearing in the record before us, the judgment must be affirmed.

Judgment affirmed.

Dooling, Acting P. J., and Stone, J. pro tem.,* concurred.

Appellants' petition for a hearing by the Supreme Court was denied May 15, 1957.

*Assigned by Chairman of Judicial Council.