In re Fred L. STANFIELD, an individual, and Fred L. Stanfield Construction Co., a partnership, Debtors.

FRED L. STANFIELD CONSTRUCTION CO., Plaintiff,

v.

STEARNS CORPORATION OF NEVADA, a Nevada Corporation; Truckee Meadows Development Co., a Nevada limited partnership; Phillip A. Stearns, Individually; Black and White, a corporation; Red and White, a partnership; and Doe's I–V; Defendants.

Bankruptcy No. 79–00445.
Adv. No. 80–0001.

United States Bankruptcy Court,
D. Nevada.

March 11, 1981.

See also, 6 B.R. 265.

Timothy J. Henderson, Reno, Nev., for plaintiff Stanfield.

David J. Guinan, Reno, Nev., for defendant Stearns.

BERT GOLDWATER, Bankruptcy Judge.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Plaintiff entered into three separate subcontracts with Stearns Corporation of Nevada (SCN), the general contractor, for a 72 unit condominium project in Sparks, Nevada, known as Silver State Condominiums. The project consisted of twelve buildings and a recreational building.

This was plaintiff's first venture as a subcontractor. He had been a carpenter and worked as a carpenter foreman. Plaintiff's subcontracts were (1) rough carpentry and framing $199,500, (2) roofing $87,000, and (3) finish carpentry $36,000.

During the job SCN had four different superintendents. The job was closed down for three months by the Sparks City officials for failure of the plans to provide proper fire safety requirements. On the rough carpentry, SCN was to furnish all materials except rough hardware (nails, etc., to hold framing together). SCN was to furnish electric power. Plaintiff was to furnish forklift for handling the materials.

Plaintiff contends that some of his claims are directly due to the failure of SCN to properly supervise and coordinate the job, to the shutdown caused by SCN which required redoing work previously done because of weather conditions during the delay, to acts and conduct which interfered with efficiency such as trenching after slabs poured, failure to supply adequate materials, failure to timely supply materials causing delays and repeating work, and to defects in plans. In addition, plaintiff contends SCN used plaintiff's men and equipment for work outside plaintiff's subcontracts.

Defendants contend that Stanfield was inexperienced, undercapitalized and finally failed to finish the job. Defendants also claim that plaintiff did not give proper notice of lien or prelien.

The trial covered August 4, 5, 6, and 7 and November 3, 4, and 5, 1980. Both sides have submitted briefs covering all issues. From all of the evidence, both oral and documentary and the exhibits in evidence, the Court makes its findings and conclusions as follows:

### FINDINGS OF FACT

1. Truckee Meadows Development Company is a joint venture composed of two limited partnerships:

a. One limited partnership is called Stearns Properties, a California limited partnership of which Phillip Stearns was the general partner and at all times the general managing partner of the ownership entity.

b. The other limited partner is Truckee Meadows Developers, a Nevada limited partnership of which Valley Ranch Company, a Neveda corporation, is the general partner.

2. Truckee Meadows Development Company recorded the statement of its joint venture with the County Recorder of Washoe County May 15, 1978 (Book 1250, Document No. 535417). This was amended June 20, 1978 (Book 1262, Document No. 539952). No further amendments were ever filed or recorded.

3. At all times Stearns Corporation of Nevada was a Nevada building contractor of which Phillip Stearns was president.

4. Truckee Meadows Development Company was the owner of real property at Sparks, Nevada, and entered into a contract with Stearns Corporation of Nevada, as general contractor, to build Silver State Condominiums, a project calling for 72 units composed of 12 buildings and a recreation hall with A units (2 bedrooms) and B units (3 bedrooms).

5. Stearns Corporation of Nevada as general contractor entered into three written subcontracts with plaintiff Stanfield Construction Company:

a. November 28, 1978 rough carpentry and framing $199,500.

b. December 11, 1978 roofing $87,000.

c. January 4, 1979 finish carpentry $36,000.

6. All subcontracts required that any charge for extras, alterations or additions were to be in writing signed by the contractor.

7. Plaintiff received payment by submitting invoices which were reviewed by defendant SCN and thereafter paid in such amount as certified by SCN through a builder's control account of Home Savings and Loan. Each time an invoice was submitted, plaintiff was required to and did sign a release of mechanic's lien which he "has, or may have" in the real property.

8. During the course of the work on the rough carpentry contract Stanfield invoiced $221,592.57. Of this amount $4,061.32 should have been charged to finish carpentry and was reinvoiced as No. 8159 and paid again on the roofing contract. SCN as contractor paid $195,553.59 on these invoices.

The disputes between the parties as to the rough carpentry contract are as follows:

a. Plaintiff claims $18,268.44 as extras.

b. Plaintiff claims $3,923.33 was wrongfully deducted.

c. Defendant SCN claims $22,926.78 which should have been paid by Stanfield and became debts which SCN paid for the account of Stanfield (back charges).

d. Plaintiff claims $14,254.20 in Exhibit B which were not invoiced.

9. As the contract was for $199,500 and Stanfield received $195,553.59, there remains $3,966.41 on the basic contract unpaid, subject to valid back charges plus extras.

10. The extras charged and remaining unpaid are as follows:

a. An extra for re-layout of buildings:
1. Invoice 8119 $1,185.36
2. Invoice 8132 $ 652.04
3. Invoice 8137 $ 431.04

b. Extras for glue, paper, vents, and clips deducted by contractor.

c. For use of a generator to be supplied by contractor:
1. $226.80 deducted from Voucher 113
2. $204.12 deducted from Voucher 153
3. $268.80 deducted from Voucher 177

d. For extra work on other buildings as shown in Invoice 7515, orally agreed to $10,550.

e. Wind damage $2,690.

f. For various extras for firring, repairs, etc.; Invoice 8109 $2,760.

11. The charges for doing over the layouts ($2,268.44) are legitimate charges caused by the shutdown of the job from December to April. During that period of time, without fault of plaintiff, the weather made all layouts useless and required redoing.

12. The generator charges are for power which was to be furnished by the contractor and should be allowed ($699.72).

13. The hardware on the job for rough carpentry consisting of glue, paper, clips, etc., was the obligation of plaintiff.

14. The work in other buildings was required to be done the same as the written change order attached to the contract. There was an oral agreement that each of the items would be carried into the whole project in the same manner and form as the written change order and would be paid accordingly ($10,550).

15. The wind damage was not due to the fault of SCN and is a risk the plaintiff had agreed to bear and was required to protect against.

16. Invoice 8109 represents work which was not in the plans and was directed to be done by the superintendent on the job and payment promised. There was no promise to pay $1,000 extra for doing work immediately. There should be allowed $1,690.

17. The amounts claimed in Exhibit B of $14,254.20 consist of numerous items. Some of the items deserve payment; others are purely within the contract. The following items were caused by the contractor's failure to coordinate the job and required the plaintiff to perform work completely outside of and not contemplated by the contract. (All other items shown in Exhibit B are items properly within the duty of plaintiff to perform under the contract.)

| | | |
|---|---|---|
| a. | Exterior sheetrocking | $150 |
| b. | Reconstruct entry doors | $ 40 |
| c. | Repair fireplace | $100 |

18. On the rough carpentry work the plaintiff was entitled to $199,500 plus the extras allowed making a total of $215,118.16. Defendant SCN paid plaintiff $195,553.59 in cash vouchers and back charges of $22,926.78 (Exhibit 17) or a total of $218,480.37 leaving a difference of credit of $3,362.21 due SCN.

19. On the roofing contract, plaintiff was to supply materials. The contract was for $87,000 on which there was paid $49,818.25. Plaintiff claims two extras: (1) for patching holes made by plumbers $1,340 which is a destruction of plaintiff's work due to the lack of coordination of the job by the contractor, and (2) $2,550 for installing vents which was merely a substitute within the plaintiff's contract for roof vents in lieu of side vents. Against the balance due plaintiff $87,000 plus $1,340 extra less $49,818.25 cash vouchers leaves $38,521.75. The defendant contractor was required to advance $28,640.87 leaving a balance of $9,880.88. In other words, the work and materials of both plaintiff *and* defendant SCN finished the entire job; that job was worth $87,000 plus plaintiff's extra of $1,340 or a total of $88,340. Defendant SCN paid $49,818.25 in vouchers to plaintiff plus back charges (Exhibit 16) of $28,640.87 to finish the contract leaving a balance due plaintiff on the contract of $9,880.88.

20. The finish contract was never completed and the parties agreed to mutually terminate the contract because of Stanfield's inability to finance the job and the mutual differences between the parties. There is nothing due Stanfield and there was no promise to pay $100 per unit damages.

21. Exhibit J is a hodgepodge of claims called "extras". Of these, only the rental of a forklift is a legitimate charge. Stanfield was renting a forklift as per his contract. Due to the closing down of the job, Stanfield was required to pay three months' rental expense of $2,250. The claim for insurance premium of $2,019 during that time was never satisfactorily established. Damage to the forklift when it became sunk in a broken water trench line is a job risk and no proof of direct and proximate fault was shown. Claims for expenses of carpenters and laborers are not established. The testimony was that Stanfield's men worked for SCN on the job (a carpenter for one month, two laborers for four months). The evidence was altogether less than required for burden of proof; plaintiff had no time sheets, no records, no names, no detail.

22. Plaintiff recorded a lien against defendant owner's land on October 3, 1979 with the Washoe County Recorder. Publication of notice of this lien foreclosure was made in Nevada State Journal on February 4, 11, and 18, 1980.

23. Service of the lien notice was served by mail on the contractor Stearns Corporation and on a general partner of the owner, Phillip A. Stearns, on October 15, 1979 by certified mail. Personal service was made on the superintendent on the project job, Gene Boardman, on October 12, 1979.

24. No prelien notice was served.

25. One Drakulich was also a lien claimant. He was not served with notice of plaintiff's claim of lien foreclosure complaint.

26. Plaintiff is entitled to attorney's fees in a reasonable sum and his costs. A reasonable sum for the plaintiff's attorney is $3,500.

## CONCLUSIONS OF LAW

1. Phillip A. Stearns is a proper party defendant as he was at all times a general partner in the joint venture ownership entity. He cannot be personally liable until all remedies against the joint venture entity have been exhausted. *Diamond National Corp. v. Thunderbird Hotel, Inc.*, 85 Nev. 271, 454 P.2d 13 (1969).

2. Stanfield should recover on the subcontracts, plus his extras, less any voucher payments and back charges. Defendants did not prove any damages except their back charges. Stanfield substantially performed the rough carpentry contract and the roofing contract. He failed to perform the finish contract. *Wells Benz, Inc. v. U. S.*, 333 F.2d 89 (9th Cir. 1964); *Vowels v. Witt*, 149 Cal.App.2d 257, 308 P.2d 415 (1957). An owner or contractor who proceeds to complete the building and claims the expense to finish the contract as a deduction is proceeding under the contract. *Dahlberg v. Girsch*, 157 Cal. 324, 107 P. 616 (1910).

3. SCN waived the requirement for written change orders by orally directing Stanfield to proceed with a promise of payment. *Freeman v. Stanbern Construction Co.*, 205 Md. 71, 106 A.2d 50 (1954) holds that an agreement in a written construction contract that it shall not be varied except by an agreement in writing may be waived by implication as well as by express agreement.

4. The release of liens which Stanfield was required to sign each time he received a voucher payment is an economic burden which this Court will not countenance. It is in the nature of an insurance adjuster's approach to an accident victim in the hospital. It is overreaching and against good conscience and is not binding upon the plaintiff. *Mitschelen v. State Farm Mutual Automobile Co.*, 89 N.M. 586, 555 P.2d 707 (1976). *See also Brimwood Homes v. Knudsen Builders Supply*, 14 Utah 2d 419, 385 P.2d 982 (1963).

5. Stanfield was overpaid on the rough carpentry contract by $3,362.21. When the cash vouchers are added to the backcharges, the sum is $218,480.37 while Stanfield's contract and allowed extras amount to only $215,118.16.

6. On the roofing contract Stanfield is owed $9,880.88 which is his contract price plus allowed extras less back charge costs to complete the contract.

7. Stanfield has no money due on the finish contract for failure to perform.

8. Stanfield is entitled to recover $2,250 for damages to his contract which placed an expense upon him for performance strictly caused by SCN and the owner when the project was shut down, and he remained liable for rental of a forklift which the subcontract required.

9. Plaintiff is entitled to a net recovery from defendants of $8,768.67 plus an attorney's fee of $3,500 and his costs.

10. A notice of claim of lien may be served on a record owner in three alternative ways:

a. Delivering a copy to the owner; or

b. Leaving a copy with a person of suitable age and discretion at the place of residence or business of the owner, and mailing a copy addressed to the owner at residence or place of business; or

c. Posting the notice in a conspicuous place, delivering a copy to a person there residing, and mailing to the owner where the property is situated. N.R.S. 108.227.

■■■ The owner was Truckee Meadows Development Company. Stanfield mailed a copy of the claim of lien to Stearns individually. Stearns was at all times a full general partner in the owner joint venture and president of SCN. The person on the job who was given a copy was Gene Boardman, superintendent of SCN. Notice to Stearns was notice to the owner. Notice to Stearns and a copy to Boardman was substantial compliance with the statute. The purpose of the statutory methods is to require that the owner be noticed. Duplication of notice by various methods is only to be certain that all bases are covered. The statute is liberal as to the contents of the lien [N.R.S. 108.229(4)]. *Fisher Bros. Inc. v. Harrah Realty Co.*, 92 Nev. 65, 545 P.2d 203 (1976) holds strict compliance with the statutes is necessary before a party is entitled to the benefits of the mechanic's lien law. Nonetheless, the notice statute is satisfied if notice be given. No evidence was presented by defendant owner that it did not receive notice; only that there was no posting and that Gene Boardman was an agent of the contractor and not an agent of the owner. Gene Boardman was a person of suitable age and discretion on the job and certified mail notice was sent to Stearns at his place of business in Newport Beach. The purpose of the statute is to give notice. If Stearns was noticed by mail as the key general partner of the ownership entity, no vain and useless additional notice would make the notice more binding or legal.

There is no need to honor form above substance. The ownership entity is making a technical objection that would deny the perfection of the claim of lien and constitute a forfeiture. *Fisher Bros.*, supra, held there was no compliance at all. Here there is substantial compliance and that is adequate to perfect the claim of lien.

■■■ 11. No prelien notice (N.R.S. 108.-2394) was given to the owner and none was required because Phillip A. Stearns was a general partner in the ownership joint venture and president of SCN Corporation. In that dual capacity, Stearns made the subcontracts with his building corporation and that was within the knowledge of the owner in which he was a full general partner. No prelien notice of claim of lien is required to be given to an owner who has knowledge of subcontracts through the fact that one of the key partners of the owner made the subcontracts with the subcontractor while president of the general contractor. See this Court's opinion at the close of plaintiff's case dated September 26, 1980.

■■■ 12. No notice of filing suit on the lien was served on one Drakulich who had also recorded a claim of lien. While this is required under N.R.S. 108.239(3), there is nothing in the statute which provides a failure to notify other claimants will prevent judgment of a claim of lien on the complaint. *S&S Carpets v. Valley Bank*, 94 Nev. 165, 576 P.2d 750 (1978) holds that one who is in the position of Drakulich has only ten days from the last *publication* of notice to persons holding or claiming liens within which to file and failing to file within that time his statement filed late may be stricken. Publication was made as required. *See* Findings of Fact, No. 22, supra. The holding of that case does not bar the plaintiff; it is a defense of the owner where a lien claimant files a claim in a pending proceeding after the time fixed by the statute for filing.

13. Upon presentation of the defendants' case, Stearns as general partner of Stearns Properties, a limited partnership, and one of the joint venturers in the owner, Truckee Meadows Development Company, claimed that the joint venture interest of Stearns Properties was sold to the other joint venturer, Truckee Meadows Developers, a limited partnership of which Valley Ranch Company, a Nevada corporation, is

the general partner. (Exhibit 7) The date of the sale is November 18, 1978, almost a year before plaintiff's lien was filed. Stearns thus reasons, corroborated by Charles Schlegel, president of Valley Ranch Company, that Stearns was not an owner or partner at the time of the subcontracts and subsequent notice of lien.

There are two complete answers to the contention that Stearns was not an owner or partner:

 a. The statement of the joint venture dated May 15, 1978 was duly recorded in Book 1250 as Document No. 535417 in the records of the county recorder. (Exhibit 5) Because Stearns Properties is referred to in that document as a corporation, an amendment was made June 20, 1978 and recorded in Book 1262 as Document 539952 showing that Stearns Properties was a limited partnership and not a corporation. (Exhibit 6) In fact, in the original recorded agreement of joint venture Stearns Properties is referred to as a (general) partnership in one place and a corporation in another.

In the amendment filed, the Truckee Meadows Development Company is called "a general partnership consisting of two *general* partners, to-wit, Truckee Meadows Developers, a Nevada Limited Partnership, and Stearns Properties, a California Limited Partnership." (Emphasis added.)

There is no Nevada requirement that a *general* partnership *record* a certificate.[1] A *limited* partnership *must* file a certificate for *record* with the county recorder. N.R.S. 88.030(1)(b). Any change in order to accurately represent the agreement may be made by amendment. N.R.S. 88.250(2)(j). In the agreement of purchase and sale between Truckee Meadows Developers and Stearns Properties the parties agreed to cause an amendment to be filed "reflecting the change of ownership". No amendment was filed.

It appears that the owner Truckee Meadows Development Company attempted to treat itself as *both* a general and a limited partnership. It did *not file* with the county clerk. It chose to *record* a certificate with the county recorder. The certificate recorded completely fails to set forth the statutory requirements of a certificate of limited partnership. The statute lists 15 items to be stated in particular as to contributions and other agreements. N.R.S. 88.030.

Thus it is clear that Truckee Meadows Development Company failed to meet the requirements of *any* Nevada statute either as a general partnership doing business under a fictitious name or as a limited partnership. What it did do was give recorded notice to the world that it was a joint venture composed of two limited partnerships and that Phillip Stearns was the general partner of one of the limited partnerships in the joint venture. That public notice was never changed and it is now estopped to deny the parties are as shown by the recorded notice and amendment.

 b. But, more than that, the so-called purchase and sale agreement (Exhibit 7) provides that the "sales price shall be the profit participation that Stearns would have received in the project had not this assignment taken place, but in no event less than $100,000.00."

Paragraph 1(c) of the agreement provides:

Until the said sum is paid as aforesaid, Stearns shall continue to have the managing partner rights and functions as set out in the joint venture agreement.

Stearns testified he had been paid in part but still had a balance due. Schlegel testified that the project had never produced a profit and that it was unlikely it would do so.

The joint venture agreement (Exhibit 5) gave Stearns broad powers including the right to accept any notice. As a matter of

---

1. A general partnership transacting business under a *fictitious name must file* a certificate with the county clerk of the county in which the business is being carried on. N.R.S. 602.-010. Every change in the members of the general partnership *must* file with the county clerk within one month after such change. N.R.S. 602.040. Limited partnerships are *not* required to file with the clerk. N.R.S. 602.080.

record Stearns appears to have acted on behalf of the owner as late as March, 1980, signing Notices of Completion on the project which were recorded to commence the running of the time limitation for filing mechanic's liens. *See* N.R.S. 108.221, et seq., and Exhibit W.

There can be no question that Stearns chose to continue to act for the ownership entity and service of notice of lien upon him was valid service.[2]

Neither can there be any question that Stearns was an owner as far as third parties are concerned. The public notice of that fact was never amended of record (although the parties showed they intended to state the facts by amendment of record). Notwithstanding the purchase and sale agreement, Stearns Properties acting through Phillip Stearns retained all of the powers as an owner as if there had been no sale until paid. Hence, it is eminently clear that the sale was conditional upon payment and Stearns continued to be and have all the powers of ownership and the public was so informed at all times.

In addition, in March, 1980, the owner Truckee Meadows Development Company borrowed additional money under its deed of trust with Home Savings and Loan. Stearns individually and one Fraser had originally guaranteed the loan and were required to sign again as individuals. The owner's name remained and was signed by Stearns:

TRUCKEE MEADOWS DEVELOPMENT COMPANY, a general partnership
By: STEARNS PROPERTIES, a limited partnership
 (s) Phillip A. Stearns
 PHILLIP A. STEARNS, a general partner

If, as contended, Stearns Properties was no longer a part of the ownership joint venture, there could be no reason for the statement that Truckee Meadows Development Company was a general partnership and Stearns was a partner in the firm. The

parties involved in the ownership entity were most careful to correct the original record so as to set the record straight as to the nature and character of Stearns Properties as a California limited partnership rather than a general partnership or a corporation. They were also most particular to provide in the purchase and sale agreement that an amendment be filed to reflect a change of ownership. Charles Schlegel testified he was a California lawyer and his signature appears on the purchase and sale agreement on behalf of Truckee Meadows Developers as president of its corporate general partner. It is a disputable presumption that a person is the owner of property from exercising acts of ownership over it, or from common reputation of his ownership. NRS 47.250. Here all of the acts of Stearns and Stearns Properties from the recording of public notice of ownership to the recording of completion notices and assertion of continued partnership in the ownership entity support, rather than dispute, the presumption of ownership.

Let judgment be entered against the defendant ownership entity, the contractor Stearns Corporation of Nevada, and Stearns individually for $8,768.67, attorney's fee of $3,500 and costs, and a judgment lien against the real property of the ownership entity in those amounts.

## JUDGMENT FOR PLAINTIFF

The Court having made Findings of Fact and Conclusions of Law, and good cause appearing, judgment is awarded to plaintiff Fred L. Stanfield and Stanfield Construction Company as follows:

1. On the subcontracts, a money judgment against the general contractor Stearns Corporation of Nevada for the sum of $8,768.67 and attorney's fees of $3,500 [N.R.S. 18.010(2)(a)], with interest on both sums of 8% per annum from January 16, 1980, the date of service of the summons (N.R.S. 17.130), and allowable costs of this action.

---

**2.** The prior decision of the Court refers to service also on Charles Schlegel. The service on

Schlegel was service of the adversary complaint, not the service of notice of lien.

2. On the mechanic's lien, a money judgment against the owner Truckee Meadows Development Company, a joint venture composed of Stearns Properties, a California limited partnership, and Truckee Meadows Developers, a Nevada limited partnership, and Phillip A. Stearns, an individual general partner of Stearns Properties, the sum of $8,768.67 and attorney's fees of $3,500 with interest of 7% per annum on both sums from October 3, 1979, when said sums were due at the time of recording the lien (N.R.S. 108.237), together with allowable costs, which money judgment may be enforced by foreclosure of the mechanic's lien as Document No. 633282 in the Office of the County Recorder of Washoe County, Nevada, against the interest of the owner Truckee Meadows Development Company, a joint venture, existing on October 3, 1979, in and to all that portion of land lying within the exterior boundaries of Silver State Condominiums, a condominium subdivision, according to the map filed November 1, 1978, as Document No. 567788 with the county recorder; and any claim on account of the money judgment for the mechanic's lien not satisfied by foreclosure shall remain a personal judgment against Truckee Meadows Development Company, a joint venture, and Phillip A. Stearns individually. [N.R.S. 108.239(8)]

3. Any amounts collected in paragraph 1 or 2 shall be credited one against the other.